132 P.3d 1095 (2006)
132 Wash.App. 415
STATE of Washington, Respondent,
v.
Chris Alfred BURKE, Jr., Appellant.
No. 32595-1-II.
Court of Appeals of Washington, Division 2.
March 7, 2006.
Publication Ordered April 25, 2006.
*1096 Stephanie C. Cunningham, Attorney at Law, Seattle, WA, for Appellant.
Kathleen Proctor, Pierce County Prosecuting Attorney's Office, Tacoma, WA, for Respondent.
BRIDGEWATER, J.
¶ 1 Chris Alfred Burke, Jr. appeals his convictions of third degree assault and intimidation of a public servant. We affirm the conviction of third degree assault, but we reverse the conviction of intimidation of a public servant and remand for resentencing.
¶ 2 Officer Billings, a Steilacoom police officer, was on duty in the early morning of July 24, 2004, when he was called to check on a party at a residence. In the residence's front yard, he noticed some people drinking beer who appeared to be under 21 years of age. Billings chased these people into the house. Once in the house, Billings saw them run out the back door.
¶ 3 In the house, Juliet Gaines, the tenant, confronted Officer Billings. She yelled at him, telling him that he did not have permission to be there and that he needed a warrant. Billings got around her and ran through the back door.
¶ 4 Billings then found himself on a deck with about 50 party attendees, most with beer bottles in their hands. A few of these people, whom Billings thought were under 21 years of age, ran off the deck. But Billings did not pursue them. Gaines followed Billings through the back door and continued screaming at him.
¶ 5 The crowd became angry, yelling profanities. Feeling outnumbered, Billings attempted to exit the deck back into the house. But the crowd closed in around him, preventing his exit. Billings yelled at the crowd to "[b]ack off," but the crowd continued closing in. 2 Report of Proceedings (RP) (Oct. 12, 2004) at 68.
¶ 6 At that point, a large male, never identified, came out of the crowd and bumped into Billings. Billings ordered the man to stop, and the man backed off.
¶ 7 Then, Billings noticed Burke charging him. Burke "belly bump[ed]" Billings. 2 RP at 69. Based on Burke's eye contact and his movement, Billings believed that Burke's assault was intentional. The force of the blow nearly knocked Billings off his feet. As Billings fell backwards, Burke immediately followed. Billings yelled at Burke to get back, but Burke refused. After a second or two, Billings pushed Burke back. Billings testified that Burke's demeanor was "[e]nraged." 2 RP at 74.
¶ 8 After Billings pushed Burke back, Burke yelled profanities and "fighting threats" at Billings. 2 RP at 75. But neither Billings nor any other witness testified as to what Burke exactly said. Burke then got into a "fighting stance" with closed fists. 2 RP at 75. At that time, Burke was a foot or two away from Billings.
¶ 9 Billings testified, "[B]efore I knew it, [Burke] swung one of his arms ... towards my face, and in a punch." 2 RP at 76. Billings blocked the swing with both hands. In the same motion as the block, Billings turned Burke around and pushed him out of the crowd and off the deck. Once there, Billings struggled with Burke and eventually got him into handcuffs. While Billings was struggling with Burke, the crowd approached, yelling "He is alone," "Let's get the cop," and "Let's take him out." 2 RP at 81. But the crowd backed off when it heard sirens.
¶ 10 During trial, Burke testified that he was drunk. When Burke first noticed Billings, he thought, "Uh-oh, the party's over." 3 RP (Oct. 13, 2004) at 251. Burke moved closer to hear what Gaines and Billings were talking about. He heard Billings and Gaines talking about the underage drinkers. Burke testified that he was "disappointed" that the party might be over, but not angry. 3 RP at 258, 273. He also testified that it was Billings *1097 who initiated the contact with him, despite his attempts to comply with Billings's requests.
¶ 11 The jury found Burke guilty of third degree assault (RCW 9A.36.031(1)(g)) and intimidating a public servant (RCW 9A.76.180(1)). The trial court orally found that these two crimes were not in the same course of conduct. It sentenced Burke to three months' jail time, low end of the standard range, and 24 months community supervision.
¶ 12 After the sentencing hearing, Burke's attorney stated in open court that she was "guilty of ineffective assistance of counsel." 6 RP (Nov. 24, 2004) at 411. She stated that, before trial, Burke had told her that citizens had filed many complaints against Officer Billings. The attorney had discounted Burke's report, stating that "we could never get anything like that from a police department." 6 RP at 412. But at the sentencing hearing, the attorney produced 18 complaints involving Officer Billings that Burke's friend had obtained. She claimed that her failure to attempt to get those records earlier would probably cause the conviction to be overturned on appeal. Our record does not include these complaints.

I. Ineffective Assistance of Counsel
¶ 13 Burke alleges that his trial attorney's assistance was ineffective. Effective assistance of counsel is guaranteed under the federal and state constitutions. See U.S. CONST. amend VI; WASH. CONST. art. I, § 22. To prove ineffective assistance of counsel, an appellant must show that (1) his counsel's performance was deficient; and that (2) this deficient performance prejudiced him. State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "If either part of the test is not satisfied, the inquiry need go no further." State v. Hendrickson, 129 Wash.2d 61, 78, 917 P.2d 563 (1996).
¶ 14 To meet the second part of this test, the appellant must prove that, but for the deficient performance of his counsel, there is a reasonable probability that the outcome would have differed. In re Pers. Restraint of Pirtle, 136 Wash.2d 467, 487, 965 P.2d 593 (1998). The appellant must accomplish this entirely through the record established in the proceedings below. McFarland, 127 Wash.2d at 335, 899 P.2d 1251. "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, which may be filed concurrently with the direct appeal." McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
¶ 15 At the sentencing hearing, Burke's trial counsel stated that she had obtained 18 complaints against Billings. Before trial, Burke had told her of complaints against Billings, but she had told him "that that was too bad because we could never get anything like that from a police department." 6 RP at 412. But a friend of Burke's had managed to obtain the complaints too late to use at trial. According to Burke's trial counsel, at least two of the complaints involved Billings's violence. She concluded that the complaints "could have affected the outcome of the trial." 6 RP at 415. These complaints are not in the record in this appeal.
¶ 16 Burke argues that this statement during the sentencing hearing evidences his trial counsel's failure to conduct a proper investigation. But assuming without deciding that Burke is correct, we cannot determine without the complaints in the record whether they could have changed the trial's outcome. For example, there is no evidence regarding the results of any investigations arising out of these complaints. If Burke wishes to raise this argument on appeal, he must do so through a personal restraint petition. McFarland, 127 Wash.2d at 335, 899 P.2d 1251.

II. Sufficiency of the Evidence
¶ 17 Burke challenges the sufficiency of the evidence to convict him of intimidating a public official. We reverse a conviction for insufficient evidence only if, after viewing the evidence and all reasonable inferences from it in the light most favorable to the State, no rational trier of fact could have found guilt beyond a reasonable doubt. *1098 State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Thomas, 150 Wash.2d 821, 875, 83 P.3d 970 (2004) (citing State v. Cord, 103 Wash.2d 361, 367, 693 P.2d 81 (1985)).
¶ 18 To convict Burke of intimidating a public official, the State must prove that, by use of a threat, Burke "attempt[ed] to influence a public servant's vote, opinion, decision, or other official action as a public servant." RCW 9A.76.180(1). The statute defines "[t]hreat" as, "to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." RCW 9A.76.180(3)(a). But threats are not enough; the defendant must attempt to influence the public servant's behavior with these threats. State v. Stephenson, 89 Wash.App. 794, 807, 950 P.2d 38, review denied, 136 Wash.2d 1018, 966 P.2d 1277 (1998). A police officer is a public servant. State v. Graham, 130 Wash.2d 711, 717, 927 P.2d 227 (1996) (citing RCW 9A.04.110(22)).
¶ 19 Burke contends that there is insufficient evidence to prove two elements: (1) that he threatened Billings and (2) that he attempted to influence Billings's behavior.
¶ 20 Burke correctly contends that the testimony was vague regarding oral threats. Billings testified that Burke was "yelling profanities and threats ... fighting threats I guess would be the best way to describe them. I can't quote him at the time word for word." 2 RP at 74-75.
¶ 21 But the State directs our attention to other evidence besides oral threats, such as the fighting stance. Billings testified, "Once I pushed him off, he started yelling the profanities. Then he got up into a fighting stance, with his fists closed, something, you know, like a boxer, I guess it would be." 2 RP at 75. Burke was "maybe a foot or a foot and a half' away from Billings when he assumed this stance. 2 RP at 75. This physical behavior meets the definition of a "[t]hreat" under the statute. RCW 9A.76.180(3)(a). Moreover, the jury could have interpreted Burke's initial contact with Billings and the attempted punch as part of the threat. Thus, substantial evidence of Burke's threat exists.
¶ 22 Burke also contends that there was insufficient evidence to prove that he tried to influence Billings's behavior. We agree.
¶ 23 There is no direct evidence that Burke intended to influence Billings other than that he used profanities and "fighting threats." 2 RP at 75. And the manner of Burke's physical attack does not demonstrate his attempt to communicate, however subtly, a suggestion that Billings take, or not take, a course of action.
¶ 24 The State suggests that a reasonable jury could infer intent to influence Billings from Burke's behavior. It argues that there could be no other reason for Burke to take a fighting stance and to yell profanities. It also argues that the degree of Burke's anger, evidenced by his demeanor and actions, invites an inference that he was attempting to influence Billings.
¶ 25 But the State fails to explain how simple anger implies intent to influence. The evidence shows only that Burke was drunk and angry. Evidence of anger alone is insufficient to establish intent to influence Billings's behavior. The State must show that Burke's anger had some specific purpose to make Billings do or not do something.
¶ 26 The State next suggests that the circumstances surrounding the incident allow this inference. In particular, the State asserts that the evidence supports the inference that Burke attempted to prevent Billings from ending the party or from pursuing the underage drinkers. Burke admitted that he did not want the party to end.[1] And, he admitted to overhearing Billings talk to the home's tenant about the underage drinkers.
¶ 27 But there is no evidence linking these circumstances and Burke's actions. Nothing Burke said or did that night to make this connection evidences his intent to prevent *1099 the party's closure or to prevent Billings from chasing the underage drinkers. And Billings had discontinued his pursuit of underage drinkers by the time Burke assaulted him. The evidence must show a connection, however weak, between Burke's anger and intent to influence Billings.
¶ 28 An assault on a law enforcement officer does not, without more, imply an attempt to influence that officer's behavior. See Stephenson, 89 Wash.App. at 807, 950 P.2d 38 ("Threatening words or behavior by themselves do not violate the statute."). In this case, there is no evidence that anything more than anger motivated Burke's assault on Billings. Therefore, there was insufficient evidence to prove, beyond a reasonable doubt, that Burke attempted to influence Billings's behavior. We reverse the conviction for attempting to intimidate a public servant.
¶ 29 Because we reverse the conviction for intimidation of a public servant, we do not address Burke's argument concerning the "same course of conduct." In conclusion, because the record does not support the ineffective assistance of counsel, we affirm the conviction for third degree assault.
¶ 30 Affirmed in part, reversed in part and remanded to vacate the Burke's intimidation of a public servant conviction, and remanded for resentencing for the remaining charge.
We concur: HOUGHTON, P.J., and PENOYAR, J.
NOTES
[1] The State erroneously asserts that Burke testified to being angry upon finding out the party would end. Burke in fact testified only to being "disappointed" at the possibility that the party was over. 3 RP at 258, 273. He testified that he became angry after Billings bumped into him.