[No. 26124-7-III.   Division Three.   November 25, 2008.]

THE STATE OF WASHINGTON, *Appellant*, v. JOSE JUAN MONTANO, *Respondent*.

*John D. Knodell, Prosecuting Attorney*, and *Teresa J. Chen* and *Edward A. Owens, Deputies*, for appellant.

*Jeffrey Goldstein*, for respondent.

¶1 KORSMO, J. — The trial court dismissed a charge of intimidating a public servant filed against Jose Montano after he was arrested for assaulting his brother on a public street. The court reasoned that the threats made against the officer did not necessarily show intent to influence a public servant's actions. Believing that a jury could infer the motivation from the threats, we reverse the order of dismissal and remand for trial.

## FACTS

¶2 While on patrol, Officer Darren Smith saw respondent Jose Montano shove his brother, Salvador Montano.

The officer stopped to investigate. Salvador Montano told the officer that Jose Montano had hit him. The officer observed blood on one of Salvador's ear lobes. Officer Smith asked Jose Montano for identification. He had none with him. When asked for his name, Jose Montano became agitated, refused to provide his name, and began to walk away. The officer grabbed the back of Mr. Montano's coat, but he broke free. The officer grabbed the coat again; once again Mr. Montano broke free. The officer then grabbed Mr. Montano's wrist and told him he was under arrest. Mr. Montano in turn grabbed the officer's wrist and tried to pull him down.

¶3 Another officer, who had arrived during the investigation, applied a stun gun. Mr. Montano stopped struggling and was handcuffed. Officer Smith walked Mr. Montano to the patrol car. Mr. Montano became angry and pulled away. He told Officer Smith, "I know when you get off work, and I will be waiting for you." He also told the officer, "I'll kick your ass." He also called the officer a "punk ass" and stated, "I know you are afraid, I can see it in your eyes."

¶4 Once in the car, Mr. Montano made several more unsolicited comments, including the statement, "You need to retire. I see your gray hair." He repeated his belief that the officer was scared and that he could see fear in the officer's eyes.

¶5 Charges of fourth degree assault (domestic violence) and intimidating a public servant were filed in the Grant County Superior Court. Mr. Montano moved to dismiss the intimidation charge pursuant to *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986). The defense conceded that Mr. Montano had actually threatened Officer Smith but argued that there was no attempt to influence official actions. The prosecutor argued that the threats began after the arrest, so it was reasonable to conclude they were being made for the purpose of obtaining release. The trial court granted the motion, reasoning that the threats alone did not prove a purpose to influence the officer to change his actions. It was equally possible that the defendant was just

expressing anger at the arrest. The State then appealed to this court.

## ANALYSIS

■■ ¶6 Under *Knapstad*, a trial judge can dismiss a criminal charge without prejudice prior to trial when the undisputed facts fail to establish that the defendant is guilty of the charged offense. *Id.* at 356-357. Where there is a dispute about the facts, the motion to dismiss must be denied. *Id.* at 356. Because there are no disputed facts, the trial court does not make factual findings in support of its ruling. *Id.* at 357. A court reviewing the sufficiency of the evidence at trial must view the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). We believe that same standard also applies in a pretrial motion to dismiss under *Knapstad*.

■ ¶7 It is a crime to threaten a public servant in order to influence that person's official actions. The statute provides in relevant part:

(1) A person is guilty of intimidating a public servant if, by use of a threat, he attempts to influence a public servant's vote, opinion, decision, or other official action as a public servant.

. . . .

(3) "Threat" as used in this section means

(a) to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or

(b) threats as defined in [ ]RCW 9A.04.110(25).[1]

RCW 9A.76.180. The elements of this offense are (1) use of a threat (2) to influence a public servant's official behavior.

¶8 This statute has twice been the subject of published opinions. *State v. Stephenson*, 89 Wn. App. 794, 950 P.2d 38,

---

[1] The definition of "threat" in the criminal code is now codified at RCW 9A.04.110(27) as a result of the enactment of Laws of 2007, ch. 79, § 3.

*review denied,* 136 Wn.2d 1018 (1998), involved a First Amendment challenge to the statute. The decision in *State v. Burke,* 132 Wn. App. 415, 132 P.3d 1095 (2006), involved a challenge to the sufficiency of the evidence to support a conviction. Not surprisingly, both parties relied upon *Burke* in their arguments to the trial court and, again, in this court.

¶9 *Burke* involved the situation where Officer Billings chased some underage drinking suspects into a house and out again into the backyard where a large drinking party was underway. The suspects escaped in the crowd and the officer had to abandon the pursuit. *Id.* at 417. When he turned to leave, the crowd surrounded him. Chris Burke charged the officer and "belly bumped" him. *Id.* After a brief scuffle, Burke assumed a "fighting stance" and the two men came to blows. *Id.* at 417-418. Burke eventually was arrested and subsequently was charged and convicted of third degree assault and intimidating a public servant. *Id.* at 418. At trial, Burke testified that he was drunk and very disappointed that the party was ending because of the appearance of the police. *Id.*

¶10 This court overturned the intimidating a public servant conviction. *Id.* at 421. The court found that there was sufficient evidence that Burke had threatened the officer. Burke had used " 'profanities and threats' " against the officer. *Id.* He also had assumed the fighting stance. This evidence was sufficient to prove that Burke had threatened the officer. *Id.*

¶11 The court concluded, however, that there was no evidence that the threats were made for the specific purpose of influencing the officer's actions. Burke made no specific statement suggesting an attempt to influence the officer's actions, and the physical attack likewise did not suggest that Burke was communicating to the officer that he should undertake a particular course of action. *Id.* The prosecutor argued that the jury could reasonably infer that Burke intended to influence the officer's actions because there was no other reason for him to act as he did. *Id.* at

421-422. This court disagreed, noting that mere anger alone did not show intent to influence. *Id.* at 422. The court also rejected the argument that Burke must have intended to influence the officer to not end the party. The court noted that the officer was not undertaking any such action at the time he was threatened and there was simply no basis for drawing any inference of intent to influence. "The evidence must show a connection, however weak, between Burke's anger and intent to influence Billings." *Id.* Finding that there was no evidence that anything more than anger motivated Burke's actions, this court reversed the conviction for failure to prove the intent to influence element. *Id.* at 422-423.

¶12 Similarly here, Mr. Montano argues that his anger at being arrested did not show intent to influence Officer Smith's actions. However, we think there is a significant distinction between this case and *Burke*. Unlike the situation in *Burke*, here the officer was undertaking an official action at the time of the threats. He had arrested Mr. Montano and was taking him to jail when the threats began. The threats continued during transport. This is in stark contrast to *Burke* where the officer had abandoned his pursuit of the suspects and was simply trying to leave the scene.

¶13 We believe a rational trier-of-fact could infer that Mr. Montano's threats were designed to get the officer to change his course of action even if there was no explicit "I will attack you unless you release me" statement. The threats began when the officer took Mr. Montano into custody and continued throughout the transportation process until the officer turned him in to the jail. Because of the temporal proximity of the threats and the arrest, it would be permissible for the trier-of-fact to draw the conclusion that the threats were an attempt to influence the action the officer was then undertaking.

¶14 It is, of course, also possible that the trier-of-fact will determine that Mr. Montano was simply angry and vented that anger during the arrest process without attempting to

influence the officer's official actions. Indeed, the repeated threats and statements without an express request for the officer to release him tend to suggest simple anger was all that was involved. That decision, however, is one left to the trier-of-fact. Viewed in a light most favorable to the prosecution, there is evidence, "however weak,"[2] from which a trier-of-fact could find Mr. Montano intended to influence Officer Smith's official actions. Under *Knapstad*, the trial court erred in deciding what inference was to be drawn from the evidence.

¶15 The order of dismissal is reversed and the case remanded for trial.

SCHULTHEIS, C.J., and SWEENEY, J., concur.

Reconsideration denied March 4, 2009.

Review granted at 166 Wn.2d 1019 (2009).