239 P.3d 360 (2010)
STATE of Washington, Respondent,
v.
Jose Juan MONTANO, Petitioner.
No. 82855-5.
Supreme Court of Washington, En Banc.
Argued June 8, 2010.
Decided September 16, 2010.
Jeffrey Goldstein, Seattle, WA, for Petitioner.
D. Angus Lee, Grant County Prosecutor's Office, Ephrata, WA, for Respondent.
C. JOHNSON, J.
¶ 1 This case asks us to considerin the context of a Knapstad[1] dismissalwhat evidence is necessary for the State to make a prima facie showing that a defendant violated RCW 9A.76.180, the intimidation of a public servant statute. Specifically, we must determine whether a judge or jury may infer, from threats and other actions, that a defendant attempted to influence an official action by a public servant. The trial court ruled that, in the absence of direct evidence of such an attempt, the prosecution failed to make a prima facie case of intimidation. The Court of Appeals reversed, and we reverse the Court of Appeals' decision.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 While patrolling on February 25, 2007, Officer Darren Smith saw the petitioner, Jose Juan Montano (Montano), shove his brother, Salvador Montano (Salvador). When Officer Smith stopped to investigate, Salvador told the officer that Montano had hit him. The officer asked Montano for identification but Montano had none with him, and when the officer asked Montano for his *361 name, Montano refused to provide it. As Officer Smith attempted to verify Montano's identity, Montano became agitated and began to walk away. Officer Smith grabbed the back of Montano's coat to restrain him, but Montano pulled away. The officer took hold of the coat again and Montano again pulled away. Officer Smith then gripped Montano's wrist and informed him that he was under arrest. Montano broke free, grabbed the officer's wrist, and attempted to pull him over.
¶ 3 During this exchange, another officer, Sergeant Scott D. Jones, arrived at the scene. Because of Montano's continued resistance, Officer Smith asked Sergeant Jones to deploy his Taser. After Sergeant Jones twice warned Montano to stop resisting, and when Montano failed to comply and approached Jones, Jones tased Montano. Despite the shock, Montano continued to struggle and Jones tased him again. When Montano stopped struggling, Officer Smith handcuffed him and led him to the patrol car. Montano again became angry, pulled away from Smith, and told the officer, "I know when you get off work, and I will be waiting for you." As they walked toward the car, Montano continued to verbally abuse Officer Smith, saying, "I'll kick your ass," "I know you are afraid, I can see it in your eyes," and calling the officer "punk ass." Clerk's Papers at 19.
¶ 4 While Officer Smith drove Montano to the Grant County jail, Montano continued his commentary, noting that "you need to retire. I see your gray hair." Montano repeated that the officer was scared and that he could see it in Smith's eyes.
¶ 5 The State charged Montano with intimidating a public servant, fourth degree assault, and resisting arrest. Montano moved to dismiss the intimidation charge pursuant to State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986). The trial court granted the motion and dismissed the charge, concluding that the State provided insufficient evidence to satisfy the elements of intimidation. The State then moved to dismiss the remaining charges, without prejudice, in order to avoid speedy trial or double jeopardy issues and to avoid multiple trials.
¶ 6 The State appealed the trial court's dismissal of the intimidation charge to the Court of Appeals, Division Three, which reversed the trial court and remanded the case for trial. State v. Montano, 147 Wash.App. 543, 549, 196 P.3d 732 (2008).

ISSUE
¶ 7 Did the State provide sufficient evidence to survive a Knapstad motion to dismiss the charge of intimidating a public servant?

ANALYSIS
¶ 8 Under Knapstad, a defendant may make a pretrial motion to dismiss a charge and challenge the State's ability to prove all of the elements of the crime. The trial court has the inherent power to dismiss a charge when the undisputed facts are insufficient to support a finding of guilt. Knapstad, 107 Wash.2d at 351, 729 P.2d 48. The court must decide "whether the facts which the State relies upon, as a matter of law, establish a prima facie case of guilt." Knapstad, 107 Wash.2d at 356-57, 729 P.2d 48. We review de novo a trial court's dismissal of a criminal charge under Knapstad. State v. Conte, 159 Wash.2d 797, 803, 154 P.3d 194 (2007). In the present case, the trial court concluded that the evidence of Montano's behavior and threats was insufficient to establish a prima facie case of intimidation.[2]
¶ 9 A person commits the crime of intimidating a public servant if, "by use of a threat, he attempts to influence a public servant's vote, opinion, decision, or other official action as a public servant." RCW 9A.76.180. In order to survive a motion to dismiss, the State must provide some evidence both that the defendant made a threat and that the threat was made with the purpose of influencing a public servant's official action. The parties and the trial court in the present case *362 agreed that Montano's statements to Officer Smith constituted threats.[3] Their disagreement centers on whether sufficient evidence existed that Montano intended his threats to influence an official action by Officer Smith.
¶ 10 We have never considered any aspect of this intimidation statute, and only limited case law exists from the Court of Appeals. However, one decision from the Court of Appeals, Division Two, deals directly with the issue before us: State v. Burke, 132 Wash.App. 415, 132 P.3d 1095 (2006). In Burke, the defendant was convicted of intimidating a public servant after he yelled profanities and "fighting threats" at a police officer during a house party, as well as "belly bumping" the officer and swinging his fists. 132 Wash.App. at 417-18, 132 P.3d 1095. The police officer had observed several, apparently underage people drinking beer in front of the house, and he followed them through the house onto the back porch, where he was accosted by the defendant. On appeal, the court reasoned that the evidence did not support a jury's inference that the defendant intended to influence the police officer's official actions. Though the defendant's actions demonstrated his anger at the situation and at the officer, those actionsby themselvesdid not evidence an attempt to influence an action by the officer. The court reversed the conviction, holding that "[e]vidence of anger alone is insufficient to establish intent to influence [a public servant's] behavior." Burke, 132 Wash.App. at 422, 132 P.3d 1095.
¶ 11 This rule from Burke is consistent with statements in another case addressing the public servant intimidation statute, State v. Stephenson, 89 Wash.App. 794, 807, 950 P.2d 38 (1998) (holding that the intimidation statute is not unconstitutionally overbroad). In that case, the court observed that the "attempt to influence" element of the crime cannot be satisfied by threats alone. Stephenson, 89 Wash.App. at 807, 950 P.2d 38. Thus, the two courts agreed; to convict a person of intimidating a public servant, there must be some evidence suggesting an attempt to influence, aside from the threats themselves or the defendant's generalized anger at the circumstances. We agree with this rule.
¶ 12 This rule is simply a part of the general requirement that the State must prove every element of a crime beyond a reasonable doubt. Evidence is insufficient to prove an element if no reasonable jury could have found the element to be met. And in Burke, where the defendant's actions showed only that he was angry, the court held that no reasonable jury could have inferred that the defendant was attempting to influence the police officer; some evidence must independently support the "attempt to influence" element of the crime.
¶ 13 The rules of Burke and Stephenson are logically sound, and they guide the disposition of the case before us. Montano argues that the Court of Appeals incorrectly distinguished Burke from his case. Montano is correct that there is no meaningful distinction between the facts of Burke and those before us here.
¶ 14 In its opinion, the Court of Appeals in Montano distinguished the present case from Burke by pointing out that here, the police officer was taking official action (transporting Montano to jail) at the time Montano made the threats, whereas in Burke, the officer had "abandoned his pursuit ... and was simply trying to leave the scene." Montano, 147 Wash.App. at 548, 196 P.3d 732. This distinction raises two concerns: first, from the facts portrayed by the Burke court, the Montano court's conclusion that the officer had abandoned his pursuit appears to be unsupported. But even if the pursuit was abandoned, that fact does not lead inescapably to the conclusion that the officer was engaged in no official action. No court has addressed what constitutes "official action" for the purpose of this statute, and there is no need to consider it here. Second, and more importantly, the statute contains no requirement that the public servant be presently engaged in an official action in order for the defendant to attempt to influence *363 such action. In fact, such an interpretation would eliminate many reasonable applications of this statute. For example, if a person called a police station and threatened to kill any officer who tried to arrest him, the intimidation statute logically applies, even though the official action (arrest) will occur in the future. See State v. Russell, noted at 124 Wash.App. 1008, 2004 WL 2526683 (2004). Under the Montano court's reasoning, however, the intimidation statute would apply only if the officer was in the act of arresting the person when the threat was made. Such an interpretation unreasonably limits the application of the public servant intimidation statute, and we reject it. The Court of Appeals' attempt to distinguish Montano's case from Burke is unpersuasive.
¶ 15 The Burke court's reasoning applies to the facts of Montano's case. Before his arrest, Montano struggled violently with the police officers who were attempting to subdue him. From his initial refusal to provide identification to his final thrashings that resulted in two tasings, Montano grew increasingly enraged and violent. After being subdued physically, he resorted to lashing out verbally, hurling threats and insults at the officers. As in Burke, this behavior amply demonstrates Montano's anger at the situation and at the police officers. However, there is simply no evidence to suggest that Montano engaged in this behavior, or made his threats, for the purpose of influencing the police officers' actions. Instead, the evidence shows a man who was angry at being detained and who expressed that anger toward the police officers. In the absence of some evidence suggesting an attempt to influence, the State has failed to make a prima facie showing that Montano attempted to influence either officer's official action.
¶ 16 The threshold showing required for a prima facie case (and thus to survive a Knapstad motion to dismiss) is lower than that required for a conviction. Nonetheless, the State must provide at least some evidence supporting each element of the crime charged to merit consideration by a jury. Here, under the facts alleged by the State, no evidence exists that Montano intended to influence a public servant. The evidence arguably shows that Montano resisted arrest, and charging him with that crime is appropriate. But the State cannot bring an intimidation charge any time a defendant insults or threatens a public servant. Though such behavior is certainly reprehensible, it does not rise to the level of intimidation. The legislature held the same view, as evident by its inclusion in the statute the requirement that the defendant must threaten with the "attempt[ ] to influence a public servant's... official action." RCW 9A.76.180(1). Therefore, some evidence is required to link the defendant's behavior to an official action that the defendant wishes to influence.
¶ 17 Here, Montano's threats and taunts provide no evidence of any attempt to influence the police officers. The State failed to make a prima facie showing that Montano intimidated a public servant.

CONCLUSION
¶ 18 We approve of the logical approach to the intimidation statute adopted by the Court of Appeals in Burke and Stephenson. Those cases dispose of the issue before us; because the State failed to provide any evidence aside from Montano's threats and angry behaviorof his intent to influence the police officers, the State did not make a prima facie showing that the elements of the offense of intimidating a public servant were met. We therefore reverse the Court of Appeals' decision.
WE CONCUR: GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, and MARY E. FAIRHURST, Justices.
J.M. JOHNSON, J. (dissenting).
¶ 19 A reasonable jury may infer that Montano's threat of physical harm against an arresting police officer, after Montano had physically resisted arrest, was an attempt to intimidate the officer into releasing him. It is well established that juries may properly consider circumstantial evidence and reasonable inferences. However, the majority today declares that no reasonable jury could ever make such an inference from a threat and surrounding circumstances. The majority *364 repeats the trial court's error by assuming the jury's role, weighing the evidence, and making its own factual finding. This interference with proper jury functions is legally erroneous and contrary to sound policy and common sense. I dissent.
¶ 20 A Knapstad motion should be denied if, construing all inferences in the light most favorable to the State, any reasonably jury could convict the defendant. State v. Knapstad, 107 Wash.2d 346, 353, 356, 729 P.2d 48 (1986). Our courts properly instruct juries in criminal cases to consider circumstantial evidence and reasonable inferences from the evidence. 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 5.01, at 170 (3d ed. 2008) (WPIC). Judges even instruct juries that these inferences may be as probative as direct evidence. Id. This is especially true in the context of intimidation, when the coercive nature of a threat may be inferred from context instead of expressly spelled out. If any reasonable jury could have reasonably inferred from these facts that Montano intended to intimidate Officer Smith, Montano's Knapstad motion should have been denied and the case allowed to proceed to trial.
¶ 21 A review of the facts of the case, with inferences reasonably drawn in a light favorable to the State, demonstrates that a reasonable jury could have inferred that Montano's threat, complete with its attendant circumstances, was an intent to intimidate the officer into not booking Montano at the jail. Montano first demonstrated a willingness to harm law enforcement officers by forcefully resisting arrest. Montano then orally threatened to physically harm Officer Smith once Smith went off duty. Montano made further statements about Smith's alleged fear of Montano. Surely one possible intention of Montano was to get Smith to end their confrontation by dropping the arrest.
¶ 22 Jurors bring their common sense to fact-finding and know that it is normal to utter threats to influence conduct. There is no dispute Montano did threaten Officer Smith. One may infer from the threat and its attendant circumstances that Montano was attempting to influence Smith's conduct by making Smith afraid of Montano's future behavior (if his arrest proceeded to booking at jail). This is an attempt to intimidate an officer. Given the brevity and nature of their relationship, it is reasonable that Montano's only or primary intent was to secure his release. Releasing Montano without booking would be an official police action. A jury could thus properly and reasonably convict Montano of intimidating a public servant under RCW 9A.76.180. The majority's new, general rule that threats alone can never justify a charge of intimidation is an erroneous reading of the statute adopted by the legislature.[1] Majority at 6 (adopting a rule requiring evidence of an attempt to influence beyond "the threats themselves or the defendant's generalized anger"). And if the majority views Montano's resisting arrest and clear lack of respect for law enforcement as distinct from his threat, the majority compounds its error by applying its new rule to a case where the additional circumstantial evidence further indicates intent to intimidate.
¶ 23 Of course, other interpretations of the events are possible (and one jury function is to consider those alternatives). The trial court and today's majority chose one interpretationperhaps Montano was just vocalizing his frustration and anger. See Verbatim Transcript of Defendant's Motion to Dismiss (VT) at 7;[2] majority at 8. That multiple, contradictory inferences are possible indicates only that material facts are in dispute. If so, granting a Knapstad motion *365 is improper. Our system of justice dictates that juries hear the evidence and decide which inference is correct. Yet the trial court below determined one inference was better, and today's majority approves. It is just as inappropriate for a court to determine facts on a criminal Knapstad motion as on a civil motion for summary judgment. Knapstad motions are about the existence of evidence, not its weight or credibility. We should let the jury decide.
¶ 24 Today's case may comport with the Court of Appeals decision in Burke and dicta in Stephenson. State v. Burke, 132 Wash. App. 415, 132 P.3d 1095 (2006); State v. Stephenson, 89 Wash.App. 794, 807, 950 P.2d 38 (1998). However, those cases are not precedent in this court. Both cases are contradicted by cases in numerous jurisdictions (including Washington State) that conclude crimes of intimidation may rest on inferences arising from threatening conduct alone. See United States v. Balzano, 916 F.2d 1273, 1291-92 (7th Cir.1990); State v. King, 135 Wash.App. 662, 666-67, 670-71, 145 P.3d 1224 (2006); Reed v. State, 91 Ark.App. 267, 270-71, 209 S.W.3d 449 (2005); Commonwealth v. Burt, 40 Mass.App.Ct. 275, 277, 663 N.E.2d 271 (1996); People v. Thomas, 83 Cal.App.3d 511, 513-14, 148 Cal.Rptr. 52 (1978); State v. Scherck, 9 Wash.App. 792, 793-94, 514 P.2d 1393 (1973). Like Burke, these cases are postconviction challenges to the sufficiency of the evidence. And although these cases involve statutes criminalizing intimidation of witnesses, not public servants, the core requirement of intent to intimidate is the same. Each of these courts held that juries could properly infer from threatening conduct alone that the threatening party intended to coerce or intimidate. If evidence is sufficient postconviction to allow a reasonable jury to convict a defendant, it must be sufficient to allow the State to proceed to trial.
¶ 25 By ignoring the possibility that a threat could be evidence of an attempt to intimidate, today's ruling also discounts an entire category of evidence. By its own language and reliance on Burke, the majority suggests that only direct evidence is sufficient to support an intimidation charge under RCW 9A.76.180. See majority at 360-61; Burke, 132 Wash.App. at 421, 132 P.3d 1095 (suggesting that direct evidence other than a threat is needed to support an intimidation charge). This is contrary to the "pattern" criminal jury instruction in this state that all evidence, direct and circumstantial, is to be considered by the jury and that neither category is inherently more probative of guilt than the other. 11 WPIC 5.01. As a result of today's ruling, lower courts may require an express causal link between a threat and the conduct a defendant wants the public official to take (or not take). Perhaps some suspects will be kind (or foolish) enough to put their threats into an express if-then format. However, common sense tells us that attempts to intimidate are more often implied. "Arguably, a veiled threat is scarier than a specific one." King, 135 Wash.App. at 671, 145 P.3d 1224. A veiled threat may be more effective and thus the choice of many who seek to intimidate public servants. Limiting the state to only direct evidence to prove an intimidation charge is unwise and not required by the statute, and the majority provides no compelling justification for imposing such a policy choice.

CONCLUSION
¶ 26 Circumstantial evidence and reasonable inferences from such evidence may be considered by a jury in determining whether a suspect attempted to intimidate a public servant. If it is debatable whether reasonable inferences exist that Montano attempted to intimidate Officer Smith, this factual question should go to a jury, not be decided by a court. I dissent.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, and DEBRA L. STEPHENS, Justice.
NOTES
[1] State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).
[2] To support the intimidation charge, the State offered as evidence only the police report submitted in regards to the circumstances surrounding Montano's arrest. The parties do not dispute that this report was the sole source of facts the trial court considered when deciding Montano's motion to dismiss.
[3] Under RCW 9A.76.180, a threat communicates, "directly or indirectly, the intent immediately to use force against any person who is present at the time." A threat may also include any communication defined as a threat in RCW 9A.04.110(27). RCW 9A.76.180.
[1] I agree with the majority that mere insults are insufficient to survive a Knapstad motion. Majority at 9. But this case is not about mere insults. It is about threats, coupled with circumstantial evidence that may indicate an attempt to intimidate.
[2] When making its Knapstad ruling, the trial court stated:

The State here argues that [Montano's purpose of intimidating Officer Smith is] obvious from the setting and the words that were said, but, uh, is it? Or could an equal argument be made that it's [sic] anger over the officer's decision to, uh, arrest the defendant and I think, clearly, uh, one person can say, well, he's angry, he's, he's upset, he's ticked off and he's venting it on the officer....
VT at 7 (emphasis added).