FILED
COURT OF APPEALS
DIVISION II

2014 FEB 20 AM 9: 24

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 19429-5-II |
| Respondent, | Consolidated With |
| v. | No. 43041-0-II |
| CHRIS ALLEN FORTH, | |
| Appellant. | UNPUBLISHED OPINION |

WORSWICK, C.J. — On November 8, 1994, a jury found Chris Allen Forth guilty of first degree child molestation and bail jumping. The trial court imposed a special sex offender sentencing alternative (SSOSA) sentence that allowed Forth to serve his 75 month sentence under community supervision, subject to certain conditions. In 1995, Forth appealed his first degree child molestation conviction to this court. While his appeal was pending in this court, Forth fled the State and we granted the State's motion to dismiss his appeal. We issued a mandate from that appeal on November 18, 1996. Forth was later arrested pursuant to a bench warrant on December 16, 2011.

No. 19429-5-II
Consolidated With No. 43041-0-II

At Forth's February 3, 2012 SSOSA revocation hearing, the trial court found that Forth had failed to complete court-ordered treatment and failed to report to his community corrections officer as directed. The trial court entered an order revoking Forth's SSOSA sentence and committing him to 75 months of incarceration and 36 months of community custody. Forth timely appealed the trial court's SSOSA revocation order, asserting that (1) the trial court failed to credit him for time he served in an Idaho jail while awaiting extradition to Washington.

On October 30, 2012, our Supreme Court ordered this court to recall our mandate and to reinstate Forth's original appeal. On December 4, 2012, we reinstated Forth's original appeal, in which he argued (2) the trial court erred by admitting child hearsay evidence without weighing on the record each of the nine factors for determining the hearsay statements' reliability under *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984); and (3) sufficient evidence did not support his conviction. We consolidated Forth's original appeal with his appeal from the trial court's SSOSA revocation order and allowed the parties to file supplemental briefing. Forth filed a supplemental brief in which he asserts that (4) his trial counsel was ineffective for stipulating to the reliability of the child victim's hearsay statements, (5) his appellate counsel was ineffective for failing to obtain the entire verbatim record of proceedings of Forth's trial, and (6) appellate counsel's failure to obtain the entire trial record violated his state constitutional right to appeal.

Forth has also filed a statement of additional grounds for review (SAG), in which he asserts (7) the trial court erred by failing to credit him with time he had served in the community before revocation of his SSOSA sentence. We affirm Forth's convictions but remand to the trial court for a determination of whether Forth was serving time in Idaho *solely* in regard to the

2

No. 19429-5-II
Consolidated With No. 43041-0-II

Washington offense for which he sought credit and, if so, a recalculation of the credit for time served that Forth is entitled to under RCW 9.94A.505(6).

FACTS

Forth and Tina Bennett married in 1982 and had two children, JAB and TB.[1] Forth and Tina dissolved their marriage in 1988, and Tina later married Donald Bennett.[2] Under the terms of the parties' dissolution decree, JAB and TB spent a majority of their time living in Pendleton, Oregon with Tina and visited Forth for four weeks every summer and on every other holiday. In the summer of 1991, JAB and TB went to visit Forth in Puyallup, Washington. After TB returned to Pendleton and started the first grade, she became more aggressive and began physically "striking out at people, mostly boys." Report of Proceedings (RP) (Nov. 2, 1994) at 7.

One evening in August 1992, TB climbed onto Donald's lap, gave him a hug, and asked for "special attention." RP (Nov. 2, 1994) at 7. Tina and Donald asked TB what she had meant by "special attention," and TB responded, "[S]pecial attention like . . . daddy Chris gives her." RP (Nov. 2, 1994) at 8. When Tina and Donald again asked TB what she had meant by "special attention," TB became frustrated and went to her bedroom. Tina went to TB's bedroom and asked her again what she had meant by "special attention," but TB said that she couldn't tell her. After Tina assured TB that she could tell her anything, TB revealed that Forth had touched her

---

[1] We refer to the juvenile victim and her brother by their initials to protect their privacy interests.

[2] Because Tina and Donald Bennett share a last name, we refer to each individual by their first name for clarity, intending no disrespect.

3

inappropriately during her visit with him in the summer of 1991. Specifically, TB stated that Forth had touched her breasts and vaginal area with his hands and his mouth. TB also described a "toilet game" that she said occurred in Forth's bathroom, where Forth had directed her to urinate in his mouth. RP (Nov. 2, 1994) at 11. Tina reported TB's allegations to the Oregon Children's Services Division (CSD).

CSD caseworker Linda Olson interviewed TB on August 21, 1992. Using anatomically correct drawings of a female child and a male adult, TB described to Olson the same incidents of Forth's sexual misconduct that she had disclosed to Tina. TB told Olson that the incidents occurred during her visit with Forth in the summer of 1991.

On July 14, 1993, the State charged Forth with one count of first degree child molestation. The State later amended its information to include a bail jumping charge, after Forth failed to appear at an October 20, 1993 hearing.

Before trial, the trial court held a hearing to determine the admissibility of TB's hearsay statements to Tina and Olson. The trial court ruled that TB's hearsay statements to Tina and Olson were admissible at trial, stating:

> Well, the Court at this point makes evidentiary rulings only and in this case, like every other case, the jurors will be free to believe all or part or none of the testimony of any witness who testifies in the case. The child's competence to testify has been conceded, so we'll state the jurors will either believe or disbelieve the child. We then get to the mother and to Linda Olson.
>    The Court, of course, can take judicial notice and note that there are always motivations, ex-husband, ex-wife, there can be lots of animosity or maybe not such animosity and all different gradiations [sic] and variations. Other than the obvious fact that this ex-husband and ex-wife, I didn't detect any particular motivation to do anything other than what a mother should do. That doesn't mean I'm putting a stamp of accuracy on any particular witness, but I didn't see

4

anything other than the ex-husband, ex-wife syndrome to detract from the testimony of mother. And of course whether she should or should not be believed, again, can be argued to the jury.

As far as Ms. Olson, all of us are handicapped by the allegations that something happened in 1991. It, whatever it was, was disclosed in 1992 and people had to act upon it, or they did act upon it in 1992. It's now November 1, 1994 and we all have to struggle with that, and whether that hurts or helps the state, whether that hurts or helps the defense, remains to be seen.

I find that any inconsistencies or problems with Linda Olson's report are simply things where there can be problems and both sides can argue whether these are problems that should cause anybody to particularly believe or disbelieve a particular witness.

The Court will rule that the hearsay statements of the mother and of Linda Olson are admissible . . . .

We'll note an exception to the defense on the Court's ruling and as I say, I don't know if a cautionary instruction is appropriate or not, but I'll certainly consider it.

RP (Nov. 1, 1994) at 57-59.

At trial, TB, Tina, and Olson testified consistently with the facts as stated above. Additionally, Tina testified that she and Donald had driven to Seattle from Pendleton a couple of weeks after July 4, 1991, to drop off JAB and TB with Forth for a four-week visit. On cross-examination, Tina testified that during the pendency of her marriage dissolution in 1988, she had taken TB to a doctor after suspecting that TB had been sexually abused, but the doctor determined that there was no evidence of such sexual abuse. Tina stated that she became concerned about possible sexual abuse in 1988, when TB told her that "daddy had spanked her down there." RP (Nov. 2, 1994) at 32. She further stated that she didn't tell Forth about her suspicions in 1988 because "it didn't seem important," and because she was embarrassed to tell Forth about her suspicions after the doctor's examination revealed no evidence of sexual abuse. RP (Nov. 2, 1994) at 32-33.

5

Prior to Donald's testimony, the State requested that the trial court allow Donald to testify about TB's statement that she had asked him for "special attention." Outside the presence of the jury, Donald stated that TB had asked him for "special attention," that he did not know what she had meant by the statement, that TB never told him what she had meant by the statement, and that TB did not talk to him about her allegations of Forth's sexual misconduct. Following this inquiry, defense counsel stipulated to the admissibility of TB's hearsay statement to Donald.

Forth testified that he drove to Pendleton in late June of 1991 to stay with his grandmother for her 80th birthday party and for a family reunion. He further testified that Tina dropped off JAB and TB at his grandmother's house on July 6 or July 7, and that he drove the children to Puyallup a couple of days later. Forth stated that his visitation with the children continued until July 16, 1991, at which point he drove the children back to Tina's home in Pendleton. The testimony of defense witnesses Joe Forth, Forth's older brother; Cory Haugsted, Forth's half-brother; Myrna Coan, Forth's mother; and William Coan, Forth's stepfather, all substantially supported Forth's testimony regarding the timeline of JAB and TB's visit with him in the summer of 1991. In addition, Joe Forth and Myrna Coan both testified that the bathroom in Forth's home was too small for Forth to lie on the floor in the manner that TB had alleged.

The jury returned verdicts finding Forth guilty of first degree child molestation and bail jumping. The trial court imposed a SSOSA sentence that allowed Forth to serve his 75 month sentence under community supervision, subject to certain conditions.

On April 26, 1995, Forth filed a timely notice of appeal challenging his first degree child molestation conviction. In November 1995, while Forth's appeal was still pending review in this court, the State filed a petition in the trial court to revoke Forth's SSOSA sentence. Forth failed to appear for his SSOSA revocation hearing and a bench warrant was issued for his arrest.[3] On April 23, 1996, the State filed a motion with this court to dismiss Forth's appeal, asserting that he waived his right to appeal by fleeing this court's jurisdiction. On June 5, 1996, a commissioner of this court entered an order conditionally dismissing Forth's appeal. We dismissed Forth's appeal on August 8, 1996, and issued our mandate on November 18, 1996. Forth was arrested on December 16, 2011.

Following a February 3, 2012 SSOSA revocation hearing, the trial court entered an order revoking Forth's SSOSA sentence, finding that he had failed to complete treatment and had failed to report to his community corrections officer as directed. Forth asserted at the revocation hearing that he was entitled to six months and three days credit for time served in Idaho on the bench warrant. The trial court disagreed, stating:

> You were sitting in the Idaho jail because you went to another jurisdiction, and we had to extradite you back here. You don't get credit for the time you spent in the Idaho jail. You only get credit for the time you spent in our state and our jail.

RP (Feb. 3, 2012) at 11-12. On February 8, 2012, Forth timely appealed the trial court's order revoking his SSOSA sentence.

---

[3] For reasons that are unclear from the record on appeal, Forth's bench warrant was quashed; a second bench warrant for his arrest issued in December 1998. It was revealed at the February 3, 2012 SSOSA revocation hearing that Forth had fled to Idaho and had assumed the name "John Conrad" until his arrest on December 16, 2011.

No. 19429-5-II
Consolidated With No. 43041-0-II

On April 12, 2012, Forth filed a motion with this court to recall the mandate from his 1995 appeal, which motion we denied on June 27, 2012. Forth filed in our Supreme Court a motion for discretionary review of the order denying his motion to recall our mandate. On October 30, 2012, our Supreme Court ordered this court to recall our mandate and to reinstate Forth's appeal. On December 4, 2012, we reinstated Forth's appeal, consolidated that appeal with his appeal from the trial court's SSOSA revocation order, and allowed the parties to file supplemental briefing.

ANALYSIS

I. CHILD HEARSAY EVIDENCE

Forth first contends that the trial court erred by admitting evidence of TB's hearsay statements to Tina and Olson. Specifically, Forth argues that we should reverse his first degree child molestation conviction because the trial court failed to evaluate on the record the nine *Ryan* factors for determining the reliability of child hearsay statements. Because evidence presented at the child hearsay hearing supports the trial court's conclusion that TB's hearsay statements were reliable, and thus admissible under former RCW 9A.44.120 (1991), we disagree.

We review a trial court's decision to admit child hearsay evidence for an abuse of discretion. *State v. Borboa*, 157 Wn.2d 108, 121, 135 P.3d 469 (2006). A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). The child

No. 19429-5-II
Consolidated With No. 43041-0-II

hearsay statute, former RCW 9A.44.120,[4] governed the admissibility of TB's out-of-court statements and provided in relevant part:

> A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another or describing any attempted act of sexual contact with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:
> (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> (2) The child either:
> (a) Testifies at the proceedings; or
> (b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
> . . . .

Because TB testified at trial, the issue before us is whether her statements were sufficiently reliable to be admitted through the testimony of Tina and Olson. In determining whether the time, content, and circumstances of a child's hearsay statements provide sufficient indicia of reliability, a trial court applies the nine *Ryan* factors. *State v. Woods*, 154 Wn.2d 613, 623, 114 P.3d 1176 (2005) (citing *Ryan*, 103 Wn.2d 165). Those factors include:

> (1) whether the child had an apparent motive to lie, (2) the child's general character, (3) whether more than one person heard the statements, (4) the spontaneity of the statements, (5) whether trustworthiness was suggested by the timing of the statement and the relationship between the child and the witness, (6)

---

[4] The language of former RCW 9A.44.120 remains substantially the same in its current form. The current statute now contains language allowing for the admission of child hearsay evidence where the out-of-court statement sought to be admitted described "any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110." LAWS OF 1995, ch. 76, §1.

9

whether the statements contained express assertions of past fact, (7) whether the child's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the child's recollection being faulty, and (9) whether the surrounding circumstances suggested the child misrepresented the defendant's involvement.

*Woods*, 154 Wn.2d at 623 (citing *Ryan*, 103 Wn.2d at 175-76). A trial court need not determine that every *Ryan* factor is satisfied before admitting child hearsay evidence under former RCW 9A.44.120; it is sufficient if the evidence before the trial court shows that the *Ryan* factors are "substantially met." *State v. Swan*, 114 Wn.2d 613, 652, 790 P.2d 610 (1990).

Here, Forth does not contend that the evidence presented at the child hearsay hearing failed to support the trial court's ruling on the admissibility of TB's hearsay statements to Tina and Olson. Instead, he argues only that the trial court abused its discretion by admitting TB's hearsay statements without weighing on the record each of the nine *Ryan* factors. But a trial court need not find that every *Ryan* factor weigh in favor of reliability, so long as the factors are "substantially met." *Swan*, 114 Wn.2d at 652. Moreover, we will affirm a trial court's admission of child hearsay evidence where the reliability of the evidence is apparent from the record. *State v. Stevens*, 58 Wn. App. 478, 487, 794 P.2d 38 (1990). Here, the record contains sufficient evidence that the *Ryan* factors were substantially met and, thus, the trial court did not abuse its discretion by admitting those statements at trial.

II. SUFFICIENCY OF THE EVIDENCE

Next, Forth asserts that sufficient evidence did not support his first degree child molestation conviction. Again, we disagree.

10

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Forth of first degree child molestation, the State had to prove beyond a reasonable doubt the essential elements of former RCW 9A.44.083 (1990), which statute provided in relevant part, "A person is guilty of child molestation in the first degree when the person has sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." And former RCW 9A.44.010 (1988) defined "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party."

Forth does not assert that the State failed to present evidence in support of the elements of first degree child molestation but, instead, contends that no rational jury could have found his guilt beyond a reasonable doubt in light of the conflicting evidence regarding the timing of TB's visitation with him in the summer of 1991. Forth also contends that the State's evidence with regard to the "bathroom game" incident failed to support his first degree child molestation

11

conviction in light of defense witnesses' testimony regarding the bathroom's size. Forth's contentions essentially ask this court to reweigh the evidence and to evaluate the credibility of witnesses. But we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985). Accordingly, Forth's argument regarding the sufficiency of the evidence used to convict him is meritless and we do not address it further here.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Forth asserts in his supplemental brief that his trial counsel was ineffective for stipulating to the admissibility of TB's hearsay statement through the testimony of Donald, and that his original counsel on appeal was ineffective for failing to order a complete transcription of his trial record. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel claim, Forth must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Performance is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice results if the outcome of the trial would have been different had defense counsel not rendered deficient performance. *McFarland*, 127 Wn.2d at 337. If Forth fails to establish either prong of this test, our inquiry ends and we need not consider the other prong. *State v.*

12

*Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). We strongly presume that counsel is effective and the defendant must show the absence of any legitimate strategic or tactical reason supporting defense counsel's actions. *McFarland*, 127 Wn.2d at 337. To rebut this presumption, the defendant bears the heavy burden of "establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

A.    *Trial Counsel*

Forth asserts that his trial counsel was ineffective for stipulating to the admissibility of TB's out-of-court statement to Donald because the statement was not admissible under former RCW 9A.44.120. Although Forth is correct that TB's statement regarding "special attention" did not describe any "act of sexual contact performed with or on the child by another," at least with regard to Donald who testified that TB never explained to him what the statement meant, it is for this very reason that he cannot demonstrate that his trial counsel's stipulation prejudiced him. Moreover, because Tina also testified as to TB's initial statement regarding "special attention," Donald's testimony was cumulative and therefore did not prejudice Forth. Accordingly, Forth cannot show that the outcome of his trial would have been different had his counsel objected to the admissibility of TB's statement to Donald and, thus, he fails to demonstrate that his trial counsel rendered ineffective assistance.

13

B.     *Appellate Counsel*

Next, Forth asserts that his original appellate counsel was ineffective for failing to order a complete verbatim transcription of his trial record. Specifically, Forth asserts that his appellate counsel was ineffective for failing to order a transcription of jury voir dire, opening statements, and closing arguments.[5] Absent a record of these proceedings, however, we cannot evaluate whether the outcome of Forth's appeal would be different had his original appellate counsel ordered a transcription of these records. *State v. Burke*, 132 Wn. App. 415, 419, 132 P.3d 1095 (2006) (citing *McFarland*, 127 Wn.2d at 335). Accordingly, on the record before us, Forth fails to demonstrate ineffective assistance of appellate counsel.

IV. RIGHT TO APPEAL

Forth also argues that his appellate counsel's failure to order a complete verbatim transcript of the trial proceedings deprived him of his right to appeal under article I, section 22, of our State Constitution. We disagree.

"A criminal defendant is 'constitutionally entitled to a 'record of sufficient completeness' to permit effective appellate review of his or her claims." *State v. Tilton*, 149 Wn.2d 775, 781, 72 P.3d 735 (2003) (quoting *State v. Thomas*, 70 Wn. App. 296, 298, 852 P.2d 1130 (1993) (quoting *Coppedge v. United States*, 369 U.S. 438, 446, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962)). However, a "record of sufficient completeness" does not necessarily equate with a

---

[5] In his supplemental brief, Forth asserts that these records are no longer available as reporter's notes may be destroyed after 15 years under RCW 36.23.070. It has not escaped our attention that Forth's absconsion likely contributed to his inability to now provide a complete verbatim transcript of trial.

complete verbatim transcript of trial. *Tilton*, 149 Wn.2d at 781. And the absence of a portion of

the trial record is not reversible error unless the defendant can demonstrate prejudice. *State v.*

*Miller*, 40 Wn. App. 483, 488, 698 P.2d 1123 (1985). Again, on the record before us, Forth

cannot demonstrate any prejudice resulting from the absence of a portion of his trial record.

Accordingly, he cannot show that he was deprived of his article I, section 22 right of appeal and

we affirm his convictions.

## V. ORDER REVOKING SOSSA SENTENCE

Next, Forth challenges the trial court's order revoking his SSOSA sentence, asserting that

the trial court erred by failing to credit him for time served in an Idaho jail while awaiting

extradition back to Washington State. Because the trial court erred by ruling as a matter of law

that Forth was not entitled to credit for time served in an out-of-state correctional facility, we

remand to the trial court for a determination of whether Forth was serving time in Idaho solely in

regard to the Washington offense for which he sought credit and, if so, to recalculate his credit

for time served.

We review de novo a trial court's decision to award an offender credit for time served.

*State v. Swiger*, 159 Wn.2d 224, 227, 149 P.3d 372 (2006). When interpreting a statute, our duty

is to implement the intent of the legislature. *State v. Thompson*, 151 Wn.2d 793, 801, 92 P.3d

228 (2004). Where a statute's meaning is plain on its face, we must give effect to that meaning

as expressing the legislature's intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

We determine a statute's plain meaning from the ordinary meaning of the statute's language, as

well as from the general context of the statute, its related provisions, and from the statutory scheme as a whole. *Jacobs*, 154 Wn.2d at 600.

RCW 9.94A.505(6) provides, "The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was solely in regard to the offense for which the offender is being sentenced." A trial court may not award credit for time served on other charges. *In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 597, 647 P.2d 1026 (1982). By its plain language, RCW 9.94A.505(6) requires sentencing courts to credit offenders with all confinement time served before sentencing if such confinement was solely in regard to the offense being sentenced. And the statute does not contain any language limiting such credit to time served in a Washington State facility. The State argues, however, that RCW 9.95.060[6] precludes Forth from receiving credit for time served in an out-of-state jail while awaiting his extradition to Washington. But RCW 9.95.900(2) states that RCW 9.95.060 applies to "any felony offense committed before July 1, 1984, and to any offense sentenced under RCW 9.94A.507 and committed on or after July 1, 2001." Here, Forth committed his offense in 1991

---

[6] RCW 9.95.060 provides in relevant part:

> When a convicted person seeks appellate review of his or her conviction and is at liberty on bond pending the determination of the proceeding by the supreme court or the court of appeals, credit on his or her sentence will begin from the date such convicted person is returned to custody. . . . If such convicted person does not seek review of the conviction, but is at liberty for a period of time subsequent to the signing of the judgment and sentence, or becomes a fugitive, credit on his sentence will begin from the date such convicted person is returned to custody.
>
> . . . .

and, thus, RCW 9.95.060 does not apply to his sentence. Accordingly, we do not consider the State's argument regarding RCW 9.95.060. Instead, we rely on the plain language of RCW 9.94A.505(6) to hold that the sentencing court was required to credit Forth with time he served in an Idaho jail, provided that Forth served such time solely in regard to the Washington offense being sentenced.

Here, the record is unclear as to whether Forth had been serving time in an Idaho jail solely for his Washington offense because the trial court foreclosed any further presentation of evidence on that issue by ruling as a matter of law that Forth was not entitled to credit for time served in an out-of-state facility. Similarly, it is unclear how much time Forth had served in the Idaho jail while awaiting his extradition.[7] Accordingly, we remand to the trial court for a determination of whether Forth was serving time in Idaho *solely* in regard to the Washington offense for which he sought credit and, if so, to recalculate the credit for time served that Forth is entitled to under RCW 9.94A.505(6).

## VI. SAG

In his SAG, Forth argues that the trial court erred by failing to credit him with time he served on community custody before the revocation of his suspended sentence. But our Supreme Court has held that a defendant is not entitled to credit against his sentence for time spent in the community under a SSOSA before the defendant's suspended sentence was revoked. *State v.*

---

[7] The trial court must resolve these factual issues on remand.

No. 19429-5-II
Consolidated With No. 43041-0-II

*Pannell*, 173 Wn.2d 222, 224, 267 P.3d 349 (2011). Following *Pannell*, we reject Forth's SAG argument.

We affirm Forth's convictions but remand to the trial court to determine whether Forth's confinement in Idaho was solely in regard to his Washington offense and, if so, to recalculate the credit to which Forth is entitled under RCW 9.94A.505(6).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Johanson, J.

_____
Bjorgen, J.

18