[No. 29913-9-III.   Division Three.   December 11, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. TEODORO MONCADA, *Appellant*.

*David N. Gasch* (of *Gasch Law Office*), for appellant.

*D. Angus Lee, Prosecuting Attorney,* and *Douglas R. Mitchell, Deputy,* for respondent.

¶1 SWEENEY, J. — The crime of intimidating a public servant requires some nexus between the threats and an attempt to influence. Threats and resisting arrest are not sufficient. *State v. Montano,* 169 Wn.2d 872, 879, 239 P.3d 360 (2010). Here the defendant engaged in a drunken, threatening tirade. But we conclude, based on recent state Supreme Court authority, that the words and conduct were not sufficient to support the intimidating element of the relevant statute. We therefore reverse and dismiss the prosecution.

## FACTS

¶2 Teodoro Moncada spent the afternoon of July 14, 2010, drinking. He started with beer that he bought at a gas station. By 1:00 or 2:00 p.m., he was drinking at the Sand Bar in Moses Lake. His friend Ryan Merritt came to the bar and saw Mr. Moncada drink three shots of liquor and seven or eight beers in an hour and a half. Mr. Moncada said that he had not eaten all day, so Mr. Merritt invited Mr. Moncada home for dinner. They went to Mr. Merritt's house, which is about 200 yards from Interstate 90 (I-90). Mr. Merritt left Mr. Moncada alone in his backyard. Mr. Moncada was gone when he returned.

¶3 Washington State Patrol Trooper Chad Bassen drove west down I-90 around 7:00 p.m. that night. He saw Mr. Moncada walk east on the freeway with his arm outstretched. It looked like he was either hitchhiking or "making obscene gestures." Report of Proceedings (RP) (Mar. 30, 2011) at 42. Trooper Bassen parked his car and got out.

¶4 Mr. Moncada quickly walked toward Trooper Bassen. Mr. Moncada looked tense and clenched his fists. Trooper Bassen told him to stop. Mr. Moncada continued to walk toward the trooper. Mr. Moncada yelled, " 'What the f**k do you want?' " *Id.* at 45. Trooper Bassen asked why he was on the freeway, and Mr. Moncada said, " 'F**k you. What the f**k are you going to do? Shoot me?' " *Id.* at 46. Trooper Bassen retrieved his stun gun. Mr. Moncada replied, " 'F**king shoot me' " and " 'Tase me or I will f**king kill you.' " *Id.* at 48. He then asked Trooper Bassen if his heart was pumping and said that " '[i]t should be because I'm going to rip your f**king head off.' " *Id.* at 49. Mr. Moncada took another step toward Trooper Bassen, and Trooper Bassen shot Mr. Moncada with the stun gun. Mr. Moncada fell onto his back. Trooper Bassen told Mr. Moncada to roll onto his stomach after the stun cycle finished, but Mr. Moncada tried to get up instead. Trooper Bassen again discharged the stun gun.

¶5 Trooper Ryan Raymond arrived. Trooper Raymond handcuffed Mr. Moncada. Both troopers could tell that Mr. Moncada was drunk. They repeatedly asked Mr. Moncada his name. Mr. Moncada repeatedly replied, " 'F**k you.' " *Id.* at 9-11; RP (Mar. 31, 2011) at 53. Trooper Raymond asked if that was really his name, and Mr. Moncada replied, " 'Take these cuffs off and I'll knock you in the f**king mouth.' " RP (Mar. 31, 2011) at 10-11.

¶6 Trooper Raymond walked Mr. Moncada to his patrol car, and Mr. Moncada began tensing up. Trooper Bassen put Mr. Moncada in the car and set the stun gun's wires on the passenger seat. Mr. Moncada said, " 'I'm going to f**king

wrap those cords around your neck and kill you and then shove that taser up your ass.' " *Id.* at 54. Trooper Bassen drove Mr. Moncada to an aide car to have the stun gun probes removed from Mr. Moncada's abdomen. During the drive, Mr. Moncada continued to threaten to kill Trooper Bassen. They met up with the aide car, and Mr. Moncada refused treatment. Trooper Bassen drove Mr. Moncada to jail. Mr. Moncada continued to threaten to kill Trooper Bassen over the course of the 20- to 30-minute drive. He also said, " 'When I get out, I'm going to find your address and kill your wife and kids.' " *Id.* at 56-57.

¶7 The State charged Mr. Moncada with intimidating a public servant, resisting arrest, obstructing a law enforcement officer, and two counts of harassment. The case proceeded to a jury trial. The court dismissed the resisting arrest charge at the close of the State's case. It also limited the jury's consideration of intimidating a public servant to Trooper Bassen's "decision or official action" to use the stun gun on Mr. Moncada.[1] Clerk's Papers at 74; RP (Mar. 31, 2011) at 24-26. The jury found Mr. Moncada guilty of intimidating a public servant and not guilty of the remaining charges.

## DISCUSSION

¶8 Intimidating a public servant requires that the State show (1) an attempt to influence a public servant's vote, opinion, decision, or other official action of a public servant (2) by use of a threat. RCW 9A.76.180(1). The attempt to influence element requires some evidence independent of the threat itself and the defendant's generalized anger. *Montano,* 169 Wn.2d at 878. The defendant's anger and threats must have "some specific purpose." *State v. Burke,* 132 Wn. App. 415, 422, 132 P.3d 1095 (2006). The

---

[1] The trial court noted that some of Mr. Moncada's statements were threats and not attempts to influence while others could be attempts to influence but not threats. RP (Mar. 31, 2011) at 24-26. The court reasoned that the only statement that encompassed both ideas was " 'Taze me or I will f**king kill you.' " *Id.* at 25.

State contends that this statement evidences Mr. Moncada's intent to get Trooper Bassen to stun him. Br. of Resp't at 5. If the statement is taken literally, "tase me" might show that Mr. Moncada wanted the trooper to stun him.

¶9 We view the facts here in a light most favorable to the State. *State v. Newcomb*, 160 Wn. App. 184, 188-89, 246 P.3d 1286, *review denied*, 172 Wn.2d 1005 (2011). The essential facts are undisputed, even when so viewed, so the only question before us is whether those facts support the elements of intimidating a public servant. That is a question of law that we will review de novo. *State v. O'Meara*, 143 Wn. App. 638, 641-42, 180 P.3d 196 (2008).

¶10 We have reviewed the few cases that address intimidating a public servant. They seem to conclude that a defendant's generalized display of anger, through words and conduct, is not enough. In *Montano*, the defendant "struggled violently with the police officers who were attempting to subdue him. From his initial refusal to provide identification to his final thrashings that resulted in a stun gun's being used on him twice, Montano grew increasingly enraged and violent. After being subdued physically, he [lashed] out verbally, hurling threats and insults at the officers." *Montano*, 169 Wn.2d at 879. The court concluded that this behavior showed "a man who was angry at being detained and who expressed that anger" rather than an attempt to influence. *Id.*

¶11 Similarly, in *Burke*, Mr. Burke was intoxicated when he charged at and " 'belly bump[ed]' " an officer. 132 Wn. App. at 417. He did not listen to the officer's commands to get back, yelled some fighting threats, and took a " 'fighting stance.' " *Id.* at 417-18. The court there concluded that "[t]here is no direct evidence that Burke intended to influence [the officer] other than that he used profanities and 'fighting threats.' And the manner of Burke's physical attack does not demonstrate his attempt to communicate, however subtly, a suggestion that Billings take, or not take, a course of action." *Id.* at 421 (citation omitted).

¶12 The facts here are similar to those in *Burke* and *Montano*. Like in *Montano* and *Burke*, Mr. Moncada immediately confronted the trooper. He hurled threats and swear words. "Tase me" is more specific than what was hurled in *Burke*. But it is still essentially an expression of anger and an invitation to fight. In context, we conclude that Mr. Moncada's words and conduct here do not show an attempt to influence but rather a drunken tirade.

¶13 The State argues that Mr. Moncada's words and behavior show that he was attempting to influence Trooper Bassen to leave him alone. Br. of Resp't at 7. It says that this is evidenced by the statement "What the f\*\*k do you want?" and Mr. Moncada's aggressive behavior at the beginning of Trooper Bassen's contact with him. Br. of Resp't at 7-8.

¶14 But there must be some connection between the defendant's threats and his purpose. *See Burke*, 132 Wn. App. at 422. In *Burke*, the police officer pursued underage drinkers through a house party. He had an angry conversation about underage drinking with the occupant. *Id.* at 417-18. Mr. Burke testified that he overheard the conversation and was disappointed that the party might be over. *Id.* The State argued that Mr. Burke's testimony was circumstantial evidence that Mr. Burke attempted to influence the officer not to break up the party or pursue the underage drinkers. *Id.* at 422. The court concluded that there was no evidence to "show that Burke's anger had some specific purpose to make [the officer] do or not do something." *Id.* Like in *Burke*, the facts here suggest that Mr. Moncada was in a drunken rage. There is simply no evidence to suggest that this rage was purposeful.

¶15 Finally, the State contends that *Burke* is distinguishable because the officer in *Burke* was not undertaking official duties like Troopers Bassen and Raymond. Br. of Resp't at 6, 10. However, the Supreme Court rejected that argument in *Montano*. 169 Wn.2d at 878-79.

¶16 We reverse the conviction.

BROWN and KULIK, JJ., concur.