## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30895-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODNEY WILLARD ANDREWS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Rodney Willard Andrews appeals his conviction for intimidating a public servant. He contends insufficient evidence links his threat to any attempt to influence a public servant's official action. We affirm.

## FACTS

On the afternoon of November 8, 2010, Child Protective Services (CPS) investigator Sandra North attempted to contact Karolee Townsend regarding her child's CPS intake. Following standard procedures, Ms. North visited Ms. Townsend's trailer park home in Ephrata while accompanied by sheriff's deputies Patrick Pitt and Ryan LaVergne. Ms. North and Deputy Pitt repeatedly knocked on the front door without response.

Eventually, Mr. Andrews opened the back door, appearing as if he just awoke and asking why his visitors were there. Ms. North asked if Ms. Townsend was home. He answered she was not and asked why Ms. North wanted to contact Ms. Townsend. Ms. North answered she needed to speak with Ms. Townsend regarding her child's CPS intake and tried to explain she could not speak with Mr. Andrews about it due to confidentiality restrictions. Mr. Andrews became irate and agitated, saying Ms. North had no reason to be there because Ms. Townsend's child was just fine. Ms. North asked where Ms. Townsend might be located. Mr. Andrews said Ms. Townsend was somewhere near Soap Lake, possibly at a friend's house. He refused to provide the friend's name, address, or telephone number but agreed to go inside and contact Ms. Townsend. He then told his visitors to go away and stop harassing him.

Ms. North, Deputy Pitt, and Deputy LaVergne retreated to the lawn's edge and waited about five minutes for Mr. Andrews to contact Ms. Townsend. Several times while they waited, Mr. Andrews opened the back door narrowly, peered at them through it, and closed it again. Believing her presence upset Mr. Andrews, Ms. North remained out of view while the deputies knocked on the door for a follow up. Deputy Pitt asked if Mr. Andrews had contacted Ms. Townsend and if she was on her way home. Without opening the door, Mr. Andrews yelled several times for the deputies to go away and stop harassing him or else he would come out and kick their asses.

The deputies returned to their vehicle, where they located and called a telephone number for Ms. Townsend. A male answered and said Ms. Townsend was on her way home. When she arrived about five minutes later, Mr. Andrews exited the trailer and

2

walked toward the deputies while shaking a stick and yelling he was going to kick their asses. The deputies drew their weapons. Deputy Pitt ordered Mr. Andrews to drop the stick. Mr. Andrews obeyed and began walking back to the trailer. Deputy Pitt then ordered Mr. Andrews to stop and kneel. Mr. Andrews disobeyed and continued walking back to the trailer. After unsuccessfully deploying his taser, Deputy Pitt requested dispatch to send assistance. Law enforcement arrested Mr. Andrews after a brief scuffle in the trailer.

The State charged Mr. Andrews with intimidating a public servant, third degree assault, and obstructing a law enforcement officer. The trial court dismissed the obstruction charge at the close of the State's case. A jury found him guilty of the intimidation and assault charges. He appealed.

## ANALYSIS

The issue is whether sufficient evidence supports Mr. Andrews's conviction for intimidating a public servant. He contends the State failed to show he threatened the deputies with the purpose of influencing their official action.

The Fourteenth Amendment due process clause requires the State to prove all essential elements of a charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient to support a guilty finding if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct.

3

2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of witness credibility and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

A person intimidates a public servant if "by use of a threat, he or she attempts to influence a public servant's . . . official action." RCW 9A.76.180(1).[1] This crime requires "evidence both that the defendant made a threat and that the threat was made with the purpose of influencing a public servant's official action." *State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010). Mr. Andrews concedes the threat element but contests the attempt to influence element. The attempt to influence element requires "evidence suggesting an attempt to influence, aside from the threats themselves or the defendant's generalized anger at the circumstances." *Id.* at 877.

Mr. Andrews cites *Montano*, 169 Wn.2d 872; *State v. Burke*, 132 Wn. App. 415, 132 P.3d 1095 (2006); and *State v. Moncada*, 172 Wn. App. 364, 289 P.3d 752 (2012). In *Montano*, the State charged the defendant with intimidating a public servant after he violently resisted two arresting police officers, became increasingly angry, and hurled insults and threats. 169 Wn.2d at 874-75. The defendant said to the officers, "I know when you get off work, and I will be waiting for you"; "I'll kick your ass"; and "I know you are afraid, I can see it in your eyes." *Id.* at 875. Our Supreme Court affirmed pretrial

---

[1] We quote the current version of RCW 9A.76.180 though our legislature amended it for gender neutrality and technical revisions in Laws of 2011, ch. 336, § 407.

4

dismissal, concluding,

> [T]here is simply no evidence to suggest that [the defendant] engaged in this behavior, or made his threats, for the purpose of influencing the police officers' actions. Instead, the evidence shows a man who was angry at being detained and who expressed that anger toward the police officers. . . .
> . . . some evidence is required to link the defendant's behavior to an official action that the defendant wishes to influence.

*Id.* at 879-80.

In *Burke*, a jury convicted the defendant of intimidating a public servant after he, while drunk, rushed toward and "belly bump[ed]" an investigating police officer at a house party, disobeyed commands to step back, yelled profanities and "fighting threats," took a "fighting stance," and swung his fists. 132 Wn. App. at 417-18 (alteration in original). The defendant admitted he was disappointed the officer might disband the house party. *Id.* at 418. Division Two of this court reversed the conviction, concluding,

> There is no direct evidence that [the defendant] intended to influence [the officer] other than that he used profanities and "fighting threats." And the manner of [the defendant]'s physical attack does not demonstrate his attempt to communicate, however subtly, a suggestion that [the officer] take, or not take, a course of action.

*Id.* at 421 (citation omitted).

In *Moncada*, a jury convicted the defendant of intimidating a public servant after he, while drunk, clenched his fists, quickly approached an investigating state trooper on Interstate Highway 90, and hurled profanities and threats. 172 Wn. App. at 366-67. The defendant said to the trooper, "What the f**k do you want?"; "F**k you. What the f**k are you going to do? Shoot me?"; "F**king shoot me"; and "Tase me or I will f**king

5

kill you." *Id.* at 366 (alterations in original). Division Three of this court reversed the conviction, concluding,

> "Tase me" is more specific than what was hurled in *Burke*. But it is still essentially an expression of anger and an invitation to fight. In context, . . . [the defendant]'s words and conduct here do not show an attempt to influence but rather a drunken tirade.
>
> . . . .
>
> . . . There is simply no evidence to suggest that this rage was purposeful.

*Id.* at 369.

Mr. Andrews's case is unlike *Montano*, *Burke*, and *Moncada*. He became irate and agitated by his visitors' attempt to contact Ms. Townsend regarding her child's CPS intake. He told his visitors to leave and soon verbally threatened to injure the deputies if they did not comply with his demand. But the deputies remained in a formal effort to facilitate contact between a CPS investigator and Ms. Townsend. He was aware of this effort. When Ms. Townsend arrived, he disrupted this effort by physically threatening the deputies with a stick. Considering all, a rational jury could reasonably infer Mr. Andrews made his verbal and physical threats with the purpose of influencing the deputies to abandon their effort. The deputies were public servants and their effort was official action. Thus, viewing the evidence in the light most favorable to the State, a rational jury could find the attempt to influence element beyond a reasonable doubt.

Mr. Andrews argues his words and conduct merely reflect his generalized anger resulting from misunderstanding and perceived harassment. But the jury rejected his argument and we defer to that assessment of witness credibility and evidence weight.

6

No. 30895-2-III
*State v. Andrews*

Therefore, sufficient evidence supports Mr. Andrews's conviction for intimidating a public servant.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, A.C.J.

Kulik, J.

7