# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JAMES OTIS WRIGHT, JR.,<br><br>Appellant. | No. 49106-1-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — James Wright Jr. appeals his conviction for indecent liberties by forcible compulsion, arguing that (1) his speedy trial right was violated, (2) insufficient evidence was presented to show sexual contact and forcible compulsion, and (3) he received ineffective assistance of counsel. Wright also raises additional challenges in a statement of additional grounds (SAG).

We hold that (1) the trial court did not violate the time for trial rule, (2) sufficient evidence was presented to show sexual contact and forcible compulsion, and (3) defense counsel did not provide ineffective assistance. We also hold that Wright's SAG claims fail. Accordingly, we affirm.

FACTS

A. THE INCIDENT

On February 7, 2016, T.S.[1] was working at a church in Olympia. That morning, Wright appeared at the door, stating he was cold and needed some coffee. T.S. was familiar with Wright

---

[1] We use initials to protect the victim's privacy.

because he had attended service before and had come to the church on other days. T.S. said she would make him some coffee.

They went to the room with the coffee maker. No one else was in the room besides T.S. and Wright. Wright told T.S., "I'm here to eat your pussy." Verbatim Report of Proceedings (VRP) at 81. This "freaked [T.S.] out" and made her feel very nervous and anxious. VRP at 81. T.S. told Wright that it was not okay to talk to her that way. Then, while T.S. was bent over the counter making coffee, Wright came up behind her, pushed into her, placed his knee between her legs, reached around, pulled her in, and grabbed her crotch area with both hands. T.S. "freaked out" and began flailing and screaming. She told Wright to "[g]et off, get away, stop, let go." VRP at 87. Wright responded saying he did not do anything. Wright did not continue to hold onto T.S., but he did not step away. T.S. screamed at Wright to get out and pushed him out of the church.

T.S. testified it was "[q]uick" after Wright made the comment that he grabbed her. VRP at 83. She also said that she did not consent to Wright touching her at any point.

T.S. then texted her colleague who had worked with Wright. Her colleague told her to call the police. T.S. called the police and her husband. The police and her husband came to the church. T.S. spoke with the police about the incident, but had to tend to her church responsibilities. T.S. spoke to the police again after the second service and provided a written statement.

The police located Wright approximately eight blocks from the church. After being read his *Miranda*[2] rights and told why he was being detained, Wright said he was at the church, but he did not touch T.S..

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 49106-1-II

B.    CHARGES AND PRE-TRIAL

On February 10, the Thurston County Prosecuting Attorney's Office charged Wright with indecent liberties by forcible compulsion. Wright's arraignment date is not in our record. However, on March 16, the trial court issued an omnibus order that stated the trial date was set for April 11.[3] The omnibus order also stated that trial was estimated to last three days and the defense to be asserted at trial was a general denial. On April 6, the trial court entered a trial confirmation order stating that trial was confirmed to begin on April 11 and that the last date for trial was April 23.

On April 11, the parties presented a motion to continue the trial due to the matter being set as a standby trial. The trial court granted the motion, set a status hearing for April 13, and continued the trial until April 25. On April 12, the State filed a motion for a continuance because "Officer [Duane] Hinrich [was] unavailable due to a previously scheduled, out of state vacation the week of April 25, through April 30, 2016." Suppl. Clerk's Papers (CP) at 56. On April 13, the trial court granted the trial continuance over Wright's objection and entered an order setting trial for May 2. The continuance order also stated that the last allowable date for trial was June 2. On April 27, the trial court entered another order confirming the trial date for May 2 and stating that the last date for trial was May 23.

C.    TRIAL

At the start of trial, defense counsel reserved his opening statement. Later, defense counsel declined to provide an opening statement.

---

[3] Wright remained in custody while awaiting trial.

3

No. 49106-1-II

The State called T.S. as a witness, and she testified to the incident as discussed above. On cross-examination, defense counsel asked T.S. whether she had any sexual contact with Wright and she said "No." VRP at 95. But she also testified that if Wright "grabbing me from behind equates to sexual contact, I'd have to say yes." VRP at 95. T.S. confirmed on redirect that Wright touched her in an area of her body that she felt had a sexual context.

Officer Henrichs and Officer Shelby Nutter also testified at trial. Both officers testified that they were dispatched to an assault at the church. Both officers testified that T.S. appeared shaken when they first made contact with her. And Officer Nutter testified that T.S. had to do everything she could to hold back from crying and was repeatedly blotting tears.

D.      JURY INSTRUCTIONS

In discussing jury instructions, the trial court stated that it was striking the "phrase of putting a person in fear of being kidnapped or another person would be kidnapped" from the jury instruction on forcible compulsion because it did not "meet[ ]" with the facts of the case. VRP at 45. The trial court also stated that it would not give an "intentional" nor "married" instruction based on the elements of the crime. Defense counsel did not object to the jury instructions, which included an instruction that the lawyers' statements are not evidence and only intended to help the jury understand the evidence and apply the law.

4

No. 49106-1-II

E.    CLOSING ARGUMENTS

During closing argument, defense counsel argued that "we don't dispute the facts" but that

"what is not agreed upon is the law."  VRP at 116-17.  Defense counsel continued

> The charge here is indecent liberties by forcible compulsion.  And by that they mean in that Instruction No. 7 that Mr. Wright caused Tammy [T.S.] to do something, and I would submit he did not.  He might have done something and it's a horrible thing he did, but he did not cause her to do something and those are essential elements of the crime of indecent liberties with forcible compulsion.
>
> . . . .
>
> And I'm not standing here in front of you saying something horrible didn't happen on February 7th.  I'm just saying the State charged the wrong crime because they haven't proved the elements of this crime.

VRP at 117-18.  On rebuttal, the State argued:

> You're being asked to make a decision on the law and you are being asked to split an incredibly fine hair.  What does the instructions say?  "The defendant knowingly caused [T.S.] to have sexual contact with the defendant."  Not hearing anything about anything else except caused her to have contact with the defendant, that's the hair you're being asked to split.  So ask yourself a question.  If someone pushes you, do you have physical contact with them?  They're touching you.  Isn't that what physical contact is?  Who caused it?  The other person caused you to have physical contact with them.  Not—this is not saying—the instruction, I would submit, does not require the defendant did something to cause [T.S.] to reach out and grab him or in any way make her make an affirmative action, doesn't require her to do anything except have contact.  It requires her to have contact with him, doesn't say who has to initiate it, that he has to cause it by reaching around her by pinning her in.

VRP at 118-19.

The jury found Wright guilty as charged.  Wright appeals.

5

No. 49106-1-II

ANALYSIS

A.  TIME FOR TRIAL

Wright argues that his speedy trial right under CrR 3.3 was violated because the trial date was continued beyond the original time for trial.[4] We disagree.

1.  Legal Principles

We review a trial court's application of CrR 3.3 de novo. *State v. Hawkins*, 181 Wn.2d 170, 183, 332 P.3d 408 (2014). But we review a trial court's decision to grant a continuance for an abuse of discretion. *State v. Ollivier*, 178 Wn.2d 813, 822-23, 312 P.3d 1 (2013), *cert denied*, 135 S. Ct. 72 (2014). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. *State v. Nguyen*, 131 Wn. App. 815, 819, 129 P.3d 821 (2006).

Under CrR 3.3(b)(1)(i), a defendant held in custody pending trial must be tried within 60 days of arraignment. Violation of the time for trial rule will result in a dismissal with prejudice, whether or not the defendant can show prejudice. CrR 3.3(h); *State v. Tolles*, 174 Wn. App. 819, 823, 301 P.3d 60 (2013).

Specific periods are excluded in the time for trial calculation, including continuances. CrR 3.3(b)(5), (e)(3). "If any period of time is excluded pursuant to section (e), the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period." CrR 3.3(b)(5). The

---

[4] Wright appears to confuse violations of the constitutional right to a speedy trial with violations of the time for trial rule under CrR 3.3 as he makes references to constitutional speedy trial rights but only bases his claim on CrR 3.3. A violation of the time for trial rule does not necessarily result in a constitutional violation of the right to a speedy trial. *State v. Smith* 67 Wn. App. 847, 853 n.2, 841 P.2d 65 (1992), *review denied*, 121 Wn.2d 1019 (1993). And Wright fails to argue any of the factors that must be considered to determine whether there was a constitutional violation. *See Ollivier*, 178 Wn.2d at 827. Therefore, we only consider the argument that is supported by legal authority and references to the record, which is whether the trial court violated the time for trial rule under CrR 3.3. RAP 10.3(a)(6).

6

trial court may grant a continuance on the written agreement of the parties, which must be signed by the defendant. CrR 3.3(f)(1). The trial court may also grant a continuance on the motion of the court or a party when required in the administration of justice and the defendant will not be prejudiced in the presentation of his defense. CrR 3.3(f)(2). In doing so, the trial court must "state on the record or in writing the reasons for the continuance." CrR 3.3(f)(2).

2.      Record Fails to Support a Time for Trial Violation

Here, although there is no record showing the date Wright was arraigned, the record shows that as of the date of the omnibus order, the last date for trial was April 23. The record also shows that the parties brought a joint motion for a continuance on April 11, which the trial court granted, and the trial date was continued to April 25. This continuance, would have extended the time for trial until 30 days after April 25. CrR 3.3(b)(5), (e)(3).

Wright argues that he did not sign the order granting the continuance as required by CrR 3.3(f)(1); therefore, a trial date for April 25 is after the April 23 last day for trial. But CrR 3.3(f)(1) does not apply because that rule requires a defendant's signature for continuances based on the parties' written agreement. Here, there was no written agreement. Rather, the record shows that the matter came before the trial court on the parties' joint motion to continue, which the trial court granted. Therefore, the new last day for trial would have been 30 days after the new trial date of April 25, which was May 25.

Also, because the record shows that Wright joined in the motion to continue on April 11 and did not object to a trial continuance, he is now prohibited from raising his time for trial challenge. *See State v. MacNeven*, 173 Wn. App. 265, 268, 293 P.3d 1241 (2013) (defendant did not object to the continuance of his trial date under CrR 3.3, so was prohibited from raising a CrR

3.3 claim of trial error on appeal). Thus, Wright's challenge to the trial court's continuance on April 11 fails.

Wright also argues that because the first continuance on April 11 was invalid, the "second continuance [was] irrelevant because it was a continuance from an already untimely date, and improper, because there was no allegation of the officer's unavailability for the last *timely* date of trial." Reply Br. of Appellant at 1-2. But, as discussed above, the trial court's April 11 continuance of the trial date to April 25 was proper. Wright's time for trial challenge fails.

B.      SUFFICIENCY OF THE EVIDENCE

Wright argues that insufficient evidence was presented to support his conviction for indecent liberties because there is no evidence that he caused T.S. to have sexual contact with him and he did not overcome any resistance for forcible compulsion. We disagree.

1.      Legal Principles

To sustain a conviction, the State must prove all the elements of an offense beyond a reasonable doubt. *In re Matter of Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences drawn from it. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). All such inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

Circumstantial evidence and direct evidence are equally reliable. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

We review a challenge to the sufficiency of the evidence de novo. *Rich*, 184 Wn.2d at 903. We defer to the fact finder on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007). If there is insufficient evidence to prove an element of a crime, reversal is required. *State v. Smith*, 155 Wn.2d 496, 505, 120 P.3d 559 (2005).

Under RCW 9A.44.100(1)(a), a person is guilty of indecent liberties if the person "knowingly causes another person to have sexual contact with him or her or another" by forcible compulsion. Sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Forcible compulsion is defined as "physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(6). "[F]orcible compulsion is not the force inherent in any act of sexual touching, but rather is that 'used or threatened to overcome or prevent resistance by the [victim].'" *State v. Ritola*, 63 Wn. App. 252, 254-55, 817 P.2d 1390 (1991) (quoting *State v. McKnight*, 54 Wn. App. 521, 527, 774 P.2d 532 (1989)).

2.      Sexual Contact

Here, T.S. testified that Wright told her, "I'm here to eat your pussy," and then quickly came up behind her and grabbed her crotch with both hands. VRP at 81. The testimony shows that Wright did cause T.S. to have sexual contact with him as (1) Wright's grabbing of T.S. caused

her body to touch his, (2) the crotch area is an intimate part of a person's body, and (3) sexual gratification can be inferred from the sexual comments Wright made just prior to grabbing T.S.. While Wright argues that T.S. admitted she did not have sexual contact with him,[5] Wright fails to point out that T.S. also testified that "[i]f him grabbing me from behind equates to sexual contact, I'd have to say yes." VRP at 95. And T.S. also confirmed on redirect that Wright touched her in an area of her body that she felt had a sexual context. Therefore, sufficient evidence was presented to prove sexual contact.

3.      Forcible Compulsion

T.S. testified that when she was bent over the counter making coffee, Wright came up behind her, pushed into her, placed his knee between her legs, reached around, pulled her in, and grabbed her crotch with both hands. T.S. responded by freaking out, flailing, and screaming. She told Wright to "[g]et off, get away, stop, let go." VRP at 87. This testimony, viewed in the light most favorable to the State, was sufficient to find forcible compulsion. Wright's pushing of T.S., placing of his knee between her legs, grabbing of T.S.'s crotch, and then letting go only after T.S. flailed, screamed, and told him to let go shows that Wright used force to overcome any resistance.

Wright argues that this case is analogous to *Ritola*, 63 Wn. App. 252. We disagree.

In *Ritola*, the defendant reached out and squeezed the breast of a female juvenile detention counselor and then instantaneously let go. 63 Wn. App. at 253. The court reversed the juvenile court's determination that the defendant committed indecent liberties by forcible compulsion. *Id.*

---

[5] Wright implies that there must be evidence of T.S. reaching out and touching him in order to support a conviction for indecent liberties by summarily arguing that there was no evidence that T.S. touched him. We reject this argument. *State v. Manajares*, 197 Wn. App. 798, 810, 391 P.3d 530 (2017) ("Where no authorities are cited in support of a proposition, we are not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

at 257. The court concluded that there was no opportunity to resist because the touching was unexpected, and therefore, no force was used to overcome resistance. *Id*. at 255. The only force used was to touch the victim's breast and that force was insufficient to constitute forcible compulsion. *Id*. Also, "the evidence does not support a reasonable inference that the force used by [the defendant] was directed at overcoming resistance, or that such force was more than that needed to accomplish sexual touching." *Id*. at 255-56.

In contrast to *Ritola*, force other than the sexual touching was used here. Wright did not merely reach in to touch T.S.'s crotch. Wright pushed into T.S. while she was bent over the counter and placed his knee between her legs. He also reached his arms around her, pulled her in, and then grabbed her crotch. This force was more than that which constituted the sexual touching. In fact, with T.S. bent over the counter, Wright's pushing and pulling was force used "to overcome or prevent resistance by the [victim]." *Ritola*, 63 Wn. App. at 254-55 (internal quotation marks omitted). And while Wright did let T.S. go when she began screaming and flailing, he did not step away from her. Therefore, we hold that sufficient evidence was presented to prove forcible compulsion.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Wright argues that defense counsel provided ineffective assistance because he allowed trial to be held beyond the original time for trial and because he failed to bring a *Knapstad*[6] motion prior to trial. We disagree.

---

[6] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

11

No. 49106-1-II

1.      Legal Principles

The right to effective assistance of counsel is afforded criminal defendants by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). We review claims of ineffective assistance de novo. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 347, 325 P.3d 142 (2014).

To establish ineffective assistance of counsel, Wright must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If Wright fails to establish either prong of the test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). There is a strong presumption of effective assistance, and Wright bears the burden of rebutting that presumption by showing the lack of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d at 335-36. Resulting prejudice must also occur, and the appellant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 335.

1.      Time for Trial

Wright argues that defense counsel was ineffective because he "permitted the expiration of Wright's speedy trial right." Br. of Appellant at 16. However, Wright does not provide any argument, legal authority, or references to the record to support this claim outside of references to his arguments on the alleged time for trial violation, which we conclude fails. Accordingly, we

12

hold that Wright's ineffective assistance of counsel claim, based on allowing trial to occur after the time for trial date has expired, also fails.

    2.      *Knapstad* Motion

Wright also argues that counsel was ineffective because he failed to bring a *Knapstad* motion prior to trial and based his argument at trial on what was essentially a *Knapstad* motion. We disagree.

A *Knapstad* motion allows a defendant to challenge the State's ability to prove all of the elements of the crime and move to dismiss a charge. *State v. Montano*, 169 Wn.2d 872, 876, 239 P.3d 360 (2010). The trial court has inherent power to dismiss a charge when the undisputed facts are insufficient to support a finding of guilt on the charged crime. *Id.* The trial court must decide "'whether the facts which the State relies upon, as a matter of law, establish a prima facie case of guilt.'" *Id.* (quoting *Knapstad*, 107 Wn.2d at 356-57). "The procedure to be followed for *Knapstad* motions is delineated by CrR 8.3(c)."[7] *State v. Newcomb*, 160 Wn. App. 184, 188 n.1, 246 P.3d 1286 (2011).

_____

[7] CrR 8.3(c) states:

> (1) The defendant's motion shall be in writing and supported by an affidavit or declaration alleging that there are no material disputed facts and setting out the agreed facts, or by a stipulation to facts by both parties.
>
> . . . .
>
> (3) The court shall grant the motion if there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt. In determining defendant's motion, the court shall view all evidence in the light most favorable to the prosecuting attorney and the court shall make all reasonable inferences in the light most favorable to the prosecuting attorney. The court may not weigh conflicting statements and base its decision on the statement it finds the most credible.

Here, however, Wright fails to show that a *Knapstad* motion would have been successful. Pretrial, the record shows that the facts were disputed as to whether Wright touched T.S.. Wright told Officer Henrichs that he was at the church but did not touch T.S.. As a result, Wright would have been unable to submit an affidavit stating that there were no material facts in dispute and that such undisputed facts were insufficient to support a finding of guilt. While Wright argues that defense counsel's entire strategy and argument was essentially a *Knapstad* motion, it would have nonetheless been unsuccessful as there were sufficient facts to support a finding of guilt, as discussed in Section B above.

Furthermore, defense counsel's approach can be characterized as a legitimate trial tactic. First, there was a genuine issue as to whether Wright's conduct satisfied the elements of indecent liberties by forcible compulsion, which is also discussed in Section B above, so defense counsel's focus on that argument may have been strategic. Second, if defense counsel was successful in bringing a *Knapstad* motion, the charge would have been dismissed without prejudice. *State v. Powell*, 181 Wn. App. 716, 725, 326 P.3d 859 (2014). This circumstance would have allowed the State to file a new information and bring new charges against Wright based on the same facts. *Knapstad*, 107 Wn.2d at 357. However, if the jury had agreed with the defense's theory of the case, it would have returned a not guilty verdict, which would have generally precluded the State from bringing any other related charges against Wright arising from the same conduct. *State v. Gamble*, 137 Wn. App. 892, 902, 155 P.3d 962 (2007), *aff'd*, 168 Wn.2d 161, 225 P.3d 973 (2010). Therefore, defense counsel may have determined as a matter of trial strategy to have the defense's theory decided by a jury rather than by a judge pursuant to a *Knapstad* motion.

Wright fails to show that defense counsel's performance was deficient. Therefore, we hold that Wright's claim fails.

D.      SAG[8]

1.      Jury Instructions

Wright argues that the trial court erred and lessened the burden of proof when it struck the provision for kidnapping in the definition of forcible compulsion, the provision for "intentionally" in the definition of "knowingly," and the definition of "married" from the proposed jury instructions. Because Wright failed to object to the jury instructions given, we hold that Wright has waived these claims.

Generally, a party who fails to object to jury instructions below waives any claim of instructional error on appeal. RAP 2.5(a); *State v. Edwards*, 171 Wn. App. 379, 387, 294 P.3d 708 (2012). But an appellant does not waive a manifest error affecting a constitutional right by failing to object below. RAP 2.5(a)(3). The initial burden is on the appellant to demonstrate that the error is both of constitutional dimension and manifest. RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). In order to demonstrate that an error is "manifest," the appellant must show "actual prejudice," which we determine by looking at the asserted error to see if it had

---

[8] In his SAG, Wright also argues that no sexual contact occurred. However, this claim is addressed in Section B.1. and will not be repeated.

In addition, Wright makes several claims based on what he terms "use your common sense" and inconsistent testimony. SAG at 20-25. These claims address conflicting testimony, witness credibility, and the persuasiveness of the evidence. We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *Ague-Masters*, 138 Wn. App. at 102. Therefore, we do not further address these claims.

"'practical and identifiable consequences'" at trial. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (quoting *O'Hara*, 167 Wn.2d at 99).

Under the due process clauses of the federal and state constitutions, the State must prove every element of a crime beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. AMEND. XIV; WASH. CONST. art. I, § 3. Therefore, a trial court's failure to instruct the jury on each element of an offense charged denies a defendant a jury verdict on the omitted element and can be raised as manifest error affecting a constitutional right. *State v. Daniels*, 87 Wn. App. 149, 155, 940 P.2d 690 (1997), *review denied*, 133 Wn.2d 1031 (1998).

a.      Kidnapping

Wright argues that the trial court erred, negated the forcible compulsion element, and lessened the burden of proof when it struck from the jury instructions the provision in the definition of forcible compulsion involving the use of a threat to place a person in fear of being kidnapped. Wright did not object below.

The kidnapping provision within the definition of forcible compulsion is not an essential element. *See* RCW 9A.44.100. Statutory definitions of an essential element are not essential elements themselves. *See e.g., State v. Johnson*, 180 Wn.2d 295, 302, 325 P.3d 135 (2014) (for unlawful imprisonment, "the definition of 'restrain' defines and limits the scope of the essential elements. That does not make the definition itself an essential element that must be included in the information."). The essential element is forcible compulsion and an instruction on forcible compulsion was provided to the jury. It is not constitutional error for a trial court to not further

define one of the elements. *O'Hara*, 167 Wn.2d at 105; *see also Daniels*, 87 Wn. App. at 156 (failure to define "battery" as used in assault by battery instruction is not constitutional error).

Moreover, there are no facts to support the kidnapping provision in the forcible compulsion definition. Thus, Wright fails to show a manifest error affecting a constitutional right. Therefore, we hold that Wright has waived this challenge.

b.      Intentionally

Wright argues that the trial court erred and lessened the burden of proof when it struck the provision in the proposed "knowingly" instruction that stated the element was met if the person acts "intentionally." Wright did not object below.

The state of mind required for the crime of indecent liberties by forcible compulsion is "knowingly" and the trial court provided an instruction on such state of mind. While Washington Pattern Jury Instruction 10.02, which defines "knowingly," includes a provision that states "the element is also established if a person acts intentionally," the pattern instructions are not the law and not mandatory. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, 10.02, at 206 (3d ed. 2008); *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 369, 119 P.3d 816 (2005). Thus, like the definition of "forcible compulsion" above, Wright fails to show that the trial court's failure to further define "knowingly" by including "intentionally" amounted to a manifest error affecting a constitutional right. Therefore, we hold that Wright has waived this challenge.

c.      Married

Wright argues that the trial court erred and lessened the burden of proof when it declined to provide a "married" instruction. Wright did not object below.

17

The element that the victim not be the spouse of the defendant was eliminated in 2013 and no longer needs to be proven to convict a defendant for indecent liberties.[9] *See* RCW 9A.44.100 (LAWS OF 2013, ch. 94, § 2). Thus, Wright fails to show how the trial court's failure to provide a "married" instruction constitutes a manifest error affecting a constitutional right. Therefore, we hold that Wright has waived this challenge.

>    2.    Ineffective Assistance of Counsel[10]

>        a.    Failing to cross-examine victim

Wright argues that defense counsel provided ineffective assistance because he failed to thoroughly cross-examine the victim about the inconsistencies in her testimony. However, Wright does not identify what he claims were inconsistencies in the victim's testimony. The record shows that the only potential inconsistency within the victim's testimony was about whether she saw Wright again on the day of the incident at the end of the first or second service. But this particular fact was irrelevant to the incident that had occurred constituting the charged crime and the elements of that crime.

Wright argues that defense counsel's failure to attack the victim's credibility based on such inconsistent testimony constituted deficient performance. However, the "'extent of cross-

---

[9] Although the element was eliminated, the trial court included in its to-convict instruction that the State had to prove beyond a reasonable doubt "[t]hat the defendant was not the spouse or registered domestic partner of [the victim] at the time of the sexual contact." CP at 29. Wright does not challenge the inclusion.

[10] Wright's claims of ineffective assistance of counsel based on defense counsel's failure to conduct a presentence investigation, thoroughly investigate the allegations, discuss Wright's and defense counsel's roles within the case, and challenge the inconsistencies within Officer Henrichs's police report involve facts or evidence not in the record and such claims are properly raised through a personal restraint petition, not a SAG. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Therefore, we decline to address these claims.

examination is something a lawyer must decide quickly and in the heat of the conflict. This . . . is a matter of judgment and strategy.'" *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004) (quoting *State v. Stockman*, 70 Wn.2d 941, 945, 425 P.2d 898 (1967)). Wright fails to show that defense counsel's failure to cross-examine the victim about this fact was not a legitimate trial tactic and constituted deficient performance.[11] Therefore, this claim fails.

>   b.      Failing to object to jury instructions

Wright argues that defense counsel provided ineffective assistance because he failed to object to the trial court's jury instructions, which did not include the provision for kidnapping in the definition of forcible compulsion, the provision for "intentionally" in the definition of "knowingly," and the definition of "married." Wright's challenge fails for several reasons.

First, as discussed above, the facts of the case did not warrant the inclusion of a provision regarding a threat that places a person in fear of being kidnapped as a means of finding forcible compulsion. Pattern jury instructions are not mandatory. *Domingo*, 155 Wn.2d at 369. Second, the state of mind required to convict a defendant for indecent liberties is "knowingly" and such an instruction was provided to the jury. Third, the element that the victim not be the spouse of the defendant was eliminated from the statute, so a "married" instruction was not required. Thus, Wright fails to show that defense counsel's failure to object to the jury instructions constituted deficient performance. Therefore, this claim fails.

---

[11] Even if defense counsel's failure to cross-examine the victim about her inconsistent testimony constituted deficient performance, Wright fails to show any resulting prejudice because the victim's testimony regarding the incident, which formed the basis of the charged crime, remained consistent throughout her testimony.

c.       Failing to make opening statement

Wright argues that defense counsel provided ineffective assistance because he failed to make an opening statement.  But "defense counsel's decision to waive an opening statement does not constitute deficient performance."  *Davis*, 152 Wn.2d at 715.  While "[t]rial counsel has the option of making an opening statement," "[c]ompetent counsel may waive an opening statement as a strategic trial tactic."  *Id.*  Furthermore, neither the opening statement nor closing argument are evidence to be considered by the fact finder.  *State v. Lord*, 117 Wn.2d 829, 885, 822 P.2d 177 (1991).

Wright fails to show that defense counsel's failure to provide an opening statement constitutes deficient performance.  Therefore, this claim fails.

d.       Failing to highlight victim's testimony

Wright argues that defense counsel provided ineffective assistance because he failed to highlight the victim's testimony that she did not have sexual contact with Wright during the defense's closing argument.  However, defense counsel's failure to do so may be considered a legitimate trial tactic as the victim was thoroughly questioned on the issue of sexual contact and, in fact, testified that "[i]f him grabbing me from behind equates to sexual contact, I'd have to say yes."  VRP at 95.  Considering this testimony and the testimony that Wright grabbed the victim's crotch, defense counsel may have wanted to avoid emphasizing the sexual contact element and the touching that had occurred.  As a result, Wright fails to overcome the presumption of effective assistance by showing no legitimate or strategic trial tactic.  Therefore, this claim fails.

e. Admitting Wright's guilt

Wright argues that defense counsel provided ineffective assistance because he admitted Wright's guilt during closing arguments. But defense counsel's statements did not admit guilt. Instead, defense counsel argued that based on the evidence, Wright did not commit indecent liberties by forcible compulsion. While defense counsel stated that Wright "might have done something and it's a horrible thing he did," and that "I'm not standing here in front of you saying something horrible didn't happen on February 7th," those statements were used as a foundation for his argument that Wright "did not cause [the victim] to do something and those are essential elements of the crime of indecent liberties with forcible compulsion" and that "the State charged the wrong crime because they haven't proved the elements of this crime." VRP at 117-18.

Wright fails to show that defense counsel's conduct was not a legitimate trial tactic. Therefore, this claim fails.

f. Failing to cross-examine Officers Henrichs and Nutter

Wright argues that defense counsel provided ineffective assistance because he failed to cross-examine Officer Henrichs. However, the "extent of cross-examination is something a lawyer must decide quickly and in the heat of the conflict" and "is a matter of judgment and strategy." *Davis*, 152 Wn.2d at 720 (internal quotation marks omitted). Defense counsel may have decided against cross-examining Officer Henrichs to avoid highlighting his prior testimony that T.S. appeared shaken when he contacted her. Wright fails to show that defense counsel's decision was not a legitimate trial tactic. Therefore, this claim fails.

Wright also claims that defense counsel's failure to cross-examine Officer Henrichs gave the jury the impression that the State had three eyewitnesses to the alleged crime. But Officer

Henrichs testified that he was dispatched to an assault at the church and never stated that he actually observed the crime. VRP at 50.

Wright further claims that defense counsel's failure to cross-examine the officers to challenge the inconsistencies within their testimony and the police report prejudiced him and "all but assured a conviction." SAG at 35. While Wright need not reference the record in his SAG, he is required to inform us of the nature and occurrence of his alleged errors. RAP 10.10(c). Here, Wright's general allegation of inconsistencies fails to inform us of the nature and occurrence of his challenge. We are not required to search the record to find support for claims made in a SAG. RAP 10.10(c). Therefore, we do not address this claim.

g. Failing to subpoena witnesses

Wright argues that defense counsel provided ineffective assistance because he failed to subpoena T.S.'s husband and the colleague whom she texted shortly after the incident. However, an "attorney's decision about what witnesses to subpoena or ignore is tactical; it generally does not support a claim of ineffective counsel." *State v. Shilling*, 77 Wn. App. 166, 177, 889 P.2d 948, *review denied*, 127 Wn.2d 1006 (1995).

Here, defense counsel's failure to subpoena T.S.'s husband and colleague appear to be tactical decisions. Defense counsel's strategy focused on distinguishing the facts of the case from the elements of the crime, and such witnesses would not have been helpful. While Wright argues that defense counsel could have subpoenaed "any one of the 60 people who were present," the record shows that this is a reference to the amount of people present after the first service. SAG at 40. T.S. and Wright were the only people present during the actual incident. And Wright does

not allege that the people at the service would have provided any relevant testimony. Wright fails to show how defense counsel's performance was deficient. Therefore, this claim fails.

        h.      Failing to request a lesser included charge

Wright argues that defense counsel provided ineffective assistance by failing to request a "lesser included charge." SAG at 18. However, Wright fails to identify what "lesser included charge" defense counsel should have requested. Therefore, we do not address this argument. RAP 10.10(c).

        3.      Prosecutorial Misconduct

Wright argues that the prosecutor committed misconduct when he used the terms "physical" and "sexual" contact in closing arguments and that such usage lessened the burden of proof. SAG at 15. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We first determine whether the prosecutor's conduct was improper. *Id.* at 759. Any allegedly improper statements are reviewed in the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). If the prosecutor's conduct was improper, the question turns to whether the misconduct resulted in prejudice. *Emery*, 174 Wn.2d at 760.

Prejudice is established by showing a substantial likelihood that such misconduct affected the verdict. *Id*. To analyze prejudice, we look at the comments "in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009). The jury is

presumed to follow the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010). Arguments that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct. *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).

Here, during rebuttal argument, the prosecutor focused on the sexual contact element of the crime of indecent liberties; specifically, the causing of contact. The prosecutor first read the part of the court's to-convict instruction that stated the jury must find the "defendant knowingly caused Tammy L. T.S. to have sexual contact with the defendant." VRP at 118. He then argued that a person causes physical contact with another when the person pushes into another person. The prosecutor stated that the instruction did not "require the defendant did something to cause Pastor T.S. to reach out and grab him." VRP at 119.

While Wright argues that the prosecutor's use of the terms "sexual contact" and "physical contact" lowered the burden of proof, the prosecutor's statements were not improper considering the context of the prosecutor's entire argument. When speaking about physical contact, the prosecutor was explaining the contact that was required as a part of the sexual contact element and was not arguing that physical contact was all that was required.[12] As a result, the prosecutor's statements were not improper. Therefore, this claim fails.

---

[12] The trial court also instructed the jury that the lawyers' statements were only intended to help them understand the evidence and apply the law. The jury is presumed to follow the instructions. *Anderson*, 153 Wn. App. at 428.

No. 49106-1-II

    4.        Cumulative Error

Wright argues that the issues he presented cumulatively subjected him to an unfair trial. Because we find no error in the arguments raised in his SAG, Wright's cumulative error challenge fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, J.

Maxa, A.C.J.

25